**SMYTH et al. v. CONNER. (No. 2602.)**

(Court of Civil Appeals of Texas. Amarillo. Feb. 3, 1926.)

**1. Principal and agent ⚖19.**

Burden of proving agency rests on party affirming such agency.

**2. Principal and agent ⚖22(2).**

Admissions and statements of an alleged agent cannot bind principal sought to be charged until agency is established.

**3. Principal and agent ⚖23(1).**

Statements and declarations of alleged agent cannot establish agency.

**4. Principal and agent ⚖23(3).**

An agency can be established by showing ratification of particular act or similar acts by principal.

**5. Principal and agent ⚖20(1)—Plaintiff's testimony that agent was representative of defendant held inadmissible, where character of agent's representation and duties were not shown.**

In action for commissions for sale of cattle at alleged request of defendant's agent, plaintiff's testimony that he knew by hearsay that agent had leased land for defendant, and that he knew agent as representative of defendant, *held* inadmissible, where character of agent's representation and his duties were not shown.

**6. Principal and agent ⚖23(1).**

Evidence *held* not to show that person allegedly promising plaintiff commission if he sold

cattle belonging to defendant was an agent of defendant.

**7. Contracts ⊗⊐51—Defendant's promise that he and alleged principal would see that plaintiff got his commission for sale of cattle held not binding on defendant, where not supported by consideration.**

Promise of defendant that he and alleged principal would see that plaintiff got his commission for sale of cattle belonging to principal, *held* not binding on defendant, where it was not supported by consideration, in that it did not appear that defendant personally received any benefit from such sale.

**8. Frauds, statute of ⊗⊐17—Defendant's oral promise to see that plaintiff got his commission for sale of cattle belonging to another held within statute, and unenforceable.**

Oral promise of defendant that he and another would see that plaintiff got his commission for sale of cattle belonging to such other *held* a promise to answer for "debt, default, or miscarriage" of another within statute, and hence unenforceable.

**9. Pleading ⊗⊐395—Collateral liability of defendant for commission in sale of cattle belonging to another not enforced, in absence of pleading.**

Plaintiff. *held* not entitled to enforce collateral liability of defendant for commission for sale of cattle belonging to another, where there was no pleading on which to base such liability.

Appeal from Lynn County Court; C. H. Cain, Judge.

Suit by B. H. Conner against Jot Smyth and others, in which dismissal was had as to G. W. Small and another as administrators of the estate of S. H. Windham, deceased. Judgment for plaintiff, and remaining defendants appeal. Reversed and remanded.

Robt. H. Bean and Bean & Klett, all of Lubbock, for appellants.

Wilson & Randal, of Lubbock, J. I. Kilpatrick, Jr., of Cleburne, and G. E. Lockhart, of Lubbock, for appellees.

RANDOLPH, J. Conner filed this suit in the county court of Lynn county, Tex., against Jot Smyth, the Oklahoma Cattle Loan Company, and G. W. Small and W. B. Slaton, administrators of the estate of S. H. Windham, deceased, alleging in his petition, in substance, that on or about May 1, 1924, he was engaged in selling cattle on commission, and at the special instance and request of said cattle company and Jot Smyth he effected a sale of 1,156 head of cattle belonging to the S. H. Windham estate in Lynn county to the firm of Cook & Scott for a commission of 50 cents per head, which the cattle company and Jot Smyth bound and obligated themselves to pay, and on which cattle the said company held a mortgage; that the Windham estate agreed to the sale and received the benefits therefrom, with full knowledge that the commission would have to be paid.

The cattle company and Smyth filed separate answers, each containing a general demurrer, general denial, and special answer that the alleged obligation of Jot Smyth was not in writing, and was not the obligation of said Jot Smyth and the cattle company, and was not for their benefit, and there was no consideration moving to them, and said obligation was void under the statute of frauds. The other defendants filed an answer consisting of a general demurrer and general denial.

On trial of the case it was agreed by the parties that no judgment could be rendered against the Windham estate, and such estate was dismissed from the case.

The trial was had before a jury upon special issues, and on such issues and the answers thereto the trial court rendered judgment in favor of the plaintiff against Jot Smyth and the cattle company, jointly and severally, for $578, from which judgment the defendants have appealed.

Appellants, by their propositions Nos. 1 to 10, attack the answers of the jury to special issues 3, 4, 5, 6, and 7, which issues are as follows: (3) Did the defendant Jot Smyth have the authority from the Oklahoma Cattle Loan Company to pay a commission to plaintiff? (4) Did the defendant Jot Smyth obligate the defendant Cattle Loan Company to pay a commission to the plaintiff? (5) Was Jot Smyth authorized by the Oklahoma Cattle Loan Company to engage B. H. Conner to sell the Windham cattle to Cook & Scott? (6) Did Jot Smyth obligate himself to pay a commission to the plaintiff? (7) Did Jot Smyth personally guarantee the payment of a commission to the plaintiff? All of which issues were by the jury answered in the affirmative, and such answers are attacked by appellants on the grounds: That the answers are against the overwhelming weight of the evidence; that there is no evidence to support such answers; that there is no pleading upon which the answer that Jot Smyth personally guaranteed the payment of a commission to the plaintiff could be based; that, if such guaranty was made, it was verbal and not in writing, and was void under the statute of frauds; that such guaranty was without consideration to support it, in that Jot Smyth did not receive any benefit in return for such guaranty.

We set out the plaintiff's testimony in full, as there is no other attempt to fasten liability by reason of promises made, except in such testimony:

"I had arranged with Cook & Scott of Beeville, Tex., to meet me at Lamesa, Tex., on or about 1st day of May, 1924. Cook & Scott wished to buy cattle. They met me at Lamesa at my request. I had a telephone conversation with them while they were at San Angelo, Tex.,

---

⊗⊐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

before they came out to Lamesa. I had quite a lot of cattle listed to show these people. John Burns, secretary of the Hereford Breeders' Association, had told me that Cook & Scott wanted to buy some cattle, and John Burns listed with me the Singleton cattle owned by the Oklahoma Cattle Loan Company. Burns and I were to divide the commission in the event of the sale of the Singleton cattle. When I got to Lamesa I saw Jot Smyth in the hotel. Before we met Cook & Scott I told Jot Smyth I had buyers for the Singleton cattle, and asked him if he would take care of me for a commission of 50 cents per head, and he said he would. The next morning we went to see the Singleton cattle. They were the cattle that were at one time owned by S. F. Singleton and were taken over by the Oklahoma Cattle Loan Company to satisfy a loan it had on the cattle. There were probably several thousand head of the Singleton cattle. When we looked at the Singleton cattle the next day Cook & Scott said they were not interested, because there were too many old cows. Then we looked at the Windham cattle over in Gaines county. These cattle were located about 30 or 40 miles from the Singleton cattle. I understood the Windham cattle belonged to Dr. Windham, and that he had been killed a short time before. I don't think that the administrators of the Windham estate had been appointed at that time. In conversation regarding the Windham cattle, before going over there, Jot told me that he would see that I got my commission if Cook & Scott bought the cows. That was all that was said about the commission on the Windham cattle at that time. After the sale was made, Jot told me it would not be necessary to see the administrators of the Windham estate about paying the commission. The administrators of the Windham estate were W. B. Slaton and Geo. W. Small. That was at Lubbock about a day before the Windham cattle were delivered at Brownfield. Quite a while afterwards Jot Smyth and I came to Tahoka to see about the commission. Jot told Slaton and Small, the administrators, that he thought they ought to pay me a commission. I did not have any communication with the Oklahoma Cattle Loan Company about the commission. All my communications were with Jot Smyth. I know he was a representative of the Oklahoma Cattle Loan Company. I know Jot Smyth as a representative of the Oklahoma Cattle Loan Company. I know Ben Mills. 1 know he was president of the Oklahoma Cattle Loan Company. I know him as president of this company. I know that Jot Smyth leased land for the Oklahoma Cattle Loan Company, although I do not know such fact from my knowledge, but only heard of it. I also know that he made loans for the Oklahoma Cattle Loan Company; that is, I know he passed on the cattle and counted them and furnished the company with description of the cattle, and that the company would not make any loans until Jot Smyth approved the loan. I had known Jot Smyth for 20 years or more, and know that he is a cowboy and has lived in West Texas most of that time. * * * I can't say that Jot Smyth had authority to employ me as a broker in the sale of the Windham cattle. I know that the cattle company had a loan on the Windham cattle and were interested in collecting their money. I did not know who was to pay me my commission for sale of the Windham cattle, but I do know that I looked to Jot to pay me a commission, and expected him to pay it, if no one else did, because he promised me he would see that I received my commission. * * * "

The defendant Jot Smyth denies that he made any promise to pay plaintiff a commission on the Windham cattle, and also denies any authority to sell the Windham cattle or to engage a broker for the sale of the Windham cattle, or to pay or promise to pay a commission for the sale of those cattle.

[1] The existence of an agency is a question of fact necessary to be proved, and the burden of proving it rests upon the party affirming such agency. 2 C. J. p. 923, § 662.

[2, 3] Admissions and statements of an alleged agent cannot bind the principal sought to be charged until agency is established, and such statements and declarations of the alleged agent cannot establish such agency. Coleman & Davidson v. Colgate, 6 S. W. 553; 69 Tex. 88; Higley v. Dennis, 88 S. W. 400, 40 Tex. Civ. App. 133; Relief Association v. Post, 15 A. 885, 122 Pa. 579, 2 L. R. A. 44, 9 Am. St. Rep. 147.

This is the rule, and, while it is modified in the case of Missouri Pac. Ry. Co. v. Simons et al., 6 Tex. Civ. App. 621, 25 S. W. 996, that modification does not affect the application of the rule in this case. In that case, the Austin Court, by a Special Chief Justice, held, because of the fact that the alleged agent held the position of chief engineer and superintendent of construction of a portion of defendant's road which was under construction, his position in charge of the work, the fact that no other agent was to have been seen on the ground, and no other person exercised any other authority over the construction of the railroad in any of the transactions concerning the building of the road, the evidence sufficiently established the agency.

[4] It is true that an agency can be established by showing ratification of the particular act, or of similar acts by the principal (Empire Gas & Fuel Co. v. Pendar [Tex. Civ. App.] 244 S. W. 190), but in this case no effort was made to show ratification by a course of dealing.

[5] There is no evidence showing a general agency in Smyth and no evidence whatever of ratification of the particular promise alleged. Plaintiff, it is true, testifies that he knew by hearsay, but not of his own knowledge, of Smyth having leased land for the cattle company. He also testifies that he knew Jot Smyth as the representative of the cattle company, but the character of his representation and his duties are nowhere shown. Both of these statements were properly objected to on the trial, and the objection should have been sustained.

[6, 7] There being no evidence to establish agency outside of the statements charged to have been made by Smyth, we hold that no

agency was established. The claim of the plaintiff that Jot Smyth became personally liable to him for a commission because of his promise that "we will see that you get the commission" is not supported by any consideration, in that the evidence does not show that he personally received any benefit by sale of the Windham cattle. Dwyer v. Kalteyer, 68 Tex. 564, 5 S. W. 75.

[8, 9] If plaintiff's contention that Jot Smyth owes him a commission has any standing, it is on the ground that he guaranteed to pay plaintiff another's obligation. This contention falls, because, if plaintiff is seeking to hold Smyth for the "debt, default, or miscarriage" of another, and such assumption is not shown to be in writing, it cannot be enforced. Again, plaintiff has no pleading upon which to base such a collateral liability.

The questions presented by other propositions will not likely arise on another trial. For the errors indicated, the judgment of the trial court is reversed and remanded.