### TARVER, STEELE & CO., Inc., v. PENDLETON GIN CO.

### No. 662.

Court of Civil Appeals of Texas. Eastland. Jan. 31, 1930.

Rehearing Denied Feb. 28, 1930.

D. J. Brookreson, of Benjamin, for appellant.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellee.

FUNDERBURK, J.

Pendleton Gin Company, a corporation, brought this suit in the district court of Knox county against Tarver, Steele & Co., Inc., a corporation, and R. P. Rhea. Both defendants were residents of Dallas county. Both filed pleas of privilege, which were controverted. Upon the hearing of the pleas of privilege, and before the court made its ruling on same, plaintiff dismissed as to the defendant Rhea. After such dismissal, the court overruled the plea of Tarver, Steele & Co. From that action of the court, the last-named defendant has appealed.

This suit was for $987.72, representing the gain in weights of 866 bales of cotton, alleged to have been sold by plaintiff to defendant under a contract by which the cotton, when compressed and reweighed, was to be finally settled for by the purchaser paying any difference resulting from overweights and the seller paying the difference, if any, resulting from underweights.

As a basis of holding venue in Knox county, the allegations of the controverting plea, so far as material, were to the effect that the cause of action, or a part thereof, arose in Knox county, in that the contract was made in that county. One allegation essential to show that the contract was made in Knox county was to the effect that Tarver, Steele & Co., in the making of the contract, was represented by "one R. P. Rhea, the recognized agent of and as agent for" said defendant.

The sole question presented for our determination is whether or not there was evidence sufficient to support a finding by the trial court that R. P. Rhea, in making the contract for the purchase of the cotton, did so in the capacity of agent for Tarver, Steele & Co.

Plaintiff, in addition to its ginning business, had, for four or five years, been engaged in the purchase and sale of cotton. During all that time it had had dealings with R. P. Rhea. Rhea would go to plaintiff's office, inspect samples of cotton, make purchases based upon weights furnished by the seller, and pay for same by a draft drawn by him upon Tarver, Steele & Co. Plaintiff would make out an invoice of the cotton sold and deliver it to Rhea. Under Rhea's instructions, plaintiff shipped the cotton to Tarver, Steele & Co., and would attach the draft to bill of lading covering each shipment, and deposit in a local bank for collection. Tarver, Steele & Co. uniformly paid the drafts and took over the bills of lading and the cotton. In all such transactions it was a part of the understanding or agreement between plaintiff and Rhea that the cotton was to be compressed and that compress weights were finally to control; the purchaser being under obligation to pay to the seller any difference occasioned by overweights, and the seller to refund to the purchaser the difference, if any, shown by underweights.

In addition to, or as bearing upon these facts, J. E. Pendleton, sole witness for the plaintiff, testified:

"I know the firm of Tarver, Steele & Company, Inc., as well as Mr. R. P. Rhea. We have sold them cotton for several years now. As to how the account was handled, it was always Tarver, Steele & Company. * * * If the cotton sold did not come out as to the weights sold based on compress final weights, and if any overweights at the compress, why Tarver, Steele & Company would pay this. Or, if underweights, they would look to us for it. There would some-

**158**

times be a gain on a shipment and others there would be a loss, and the account would be closed on each shipment in that way. But in this case there is approximately $1,000.00 difference in the final settlement on the outturn of compress weights. I have had a conversation with Tarver, Steele & Company about this account. As to whether we received any wire or letter from Tarver, Steele & Company, fixing the price on cotton, I think possibly we received one telegram. Mr. Rhea was out of town at that time and I think we had one wire from them fixing the price. But this lot of cotton was sold them through Mr. Rhea. * * * I really did not know anything about any arrangements Mr. Rhea had, I know he would examine our samples, we would give him the invoice we made out and he would give us a draft on Tarver, Steele & Company. I have sold them cotton ever since I have been down there, some four or five years, and Mr. Rhea was handling that business during that time."

The witness then detailed his efforts to collect the account in question from Tarver, Steele & Co., the substance of which was that he called at defendant's office on two or three occasions, during which witness informed defendant that he was looking to them and not to R. P. Rhea as purchaser of the cotton, and the defendant disclaimed any liability, but notified the witness that he would have to look to R. P. Rhea, who was not their agent. As further bearing on the matter of adjusting overweights and underweights as testified to by the witness, he further testified:

"As to whether they ever came back on us for any shortage or not, our bookkeeper would handle that end of it. I do not remember to have ever paid Mr. Rhea anything on that account. I myself do not know whether there was a real shortage or not as our bookkeeper handled that end of it. This sale of cotton was handled in exactly the same way and manner as all other shipments we ever made to them."

Testimony offered by the defendant, in no sense conflicting with the testimony of plaintiff, shows that the real relation of Rhea to defendant, Tarver, Steele & Co., was not one of agency. Rhea bought and sold cotton on his own account. Tarver, Steele & Co. was one of his principal customers, to whom he sold cotton purchased by him. Tarver, Steele & Co. furnished to him market quotations. Based upon such quotations, Rhea would purchase cotton from plaintiff and others for such price and upon such classifications made by him as that he expected to make a profit based upon the quoted prices. Under Rhea's arrangement with Tarver, Steele & Co., he guaranteed weights and classifications, and the sole obligation of Tarver, Steele & Co. was to take the cotton upon the basis of the quoted prices, and the grades and weights to which the quotations applied. Tarver, Steele & Co. was not concerned as to the price paid by Rhea for cotton, nor as to the correctness of his classification, nor did they have or claim any title or interest in the cotton except as they became the owners thereof solely by reason of the payment of the drafts representing the price which Rhea had agreed to pay the seller, and their acceptance of the shipments and the bills of lading evidencing such title. Whether or not on any particular shipment of cotton Tarver, Steele & Co. owed Rhea, or whether Rhea owed Tarver, Steele & Co., was dependent upon the outturn classification and weights. For that reason Tarver, Steele & Co. kept a personal account with Rhea, charging him with the amount of all his drafts paid, and upon receipt of the out-turn reports, charging him with any shortage resulting from a lower classification or underweights, and crediting him with the amount of any gain in reclassification and overweights. This testimony was not in conflict with that offered by plaintiff. It was claimed without dispute to be the customary course of dealing in the cotton buying business, and we think it our duty to treat same as undisputed facts.

One other significant fact is necessary to be mentioned. R. P. Rhea, as a witness, testified and repeated in various forms four or five times that he had many times told the plaintiff the exact nature of his arrangement with Tarver, Steele & Co. The fact that this testimony, being so oft-repeated, was not denied, and, no reason appearing why, if it was not true, it should not have been denied, we think we are warranted in treating the same as an undisputed fact. In other words, plaintiff knew that Rhea claimed that in purchasing cotton he was acting for himself and not as agent for any third party.

If Rhea was not the agent of defendant, Tarver, Steele & Co., for the purchase of the cotton, then no part of the cause of action arose in Knox county, and the plea of privilege should have been sustained.

■■■ "The relation of agency is the consensual relation existing between two persons by virtue of which one of them is to act for and in behalf of the other and subject to his control." 2 Tex. Jur. § 5. The controverting plea tendered as an issue the fact of agency. The law never presumes agency, and, where the fact of agency is controverted, the burden of proof is on the one relying upon its existence. Winter v. Morgan & Williams (Tex. Civ. App.) 256 S. W. 342; West Lbr. Co. v. Nash (Tex. Civ. App.) 243 S. W. 704; Midsig Corp. v. Dickson (Tex. Civ. App.) 271 S. W. 654; Smythe v. Conner (Tex. Civ. App.) 280 S. W. 600;

Lane v. Sullivan (Tex. Civ. App.) 286 S. W. 541.

In Tres Palacios, etc., Co. v. Eidman, 41 Tex. Civ. App. 542, 93 S. W. 698, 701, it was said: "One seeking to hold another through the acts of an alleged agent must bind the principal upon one of two theories: (1) By showing actual authority. (2) By showing such facts as estop the alleged principal to deny the existence of actual authority. 1 Ency. of Law, 990–992. Besides these two, there is no rule upon which one can be held as a principal."

While we are not dealing with a question of the authority of an agent, we think the above rule applicable in testing the existence of an agency.

We may at once rule out of consideration any question of whether or not Rhea, if not actually an agent, should be held to be such upon the principle of a "holding out" or estoppel. In the case last mentioned, it was held that the facts constituting such estoppel must be pleaded in order to be available. Such holding is well supported by authority. Under simple allegations of agency, a party is not permitted to prove an estoppel to deny agency. In addition to the case cited, see Kohlberg v. Awbrey & Semple (Tex. Civ. App.) 167 S. W. 828; Garrow, etc., v. T. & N. O. Ry. Co. (Tex. Civ. App.) 273 S. W. 277; Mutual Ben. Life Ins. Co. v. Collin County Nat. Bank, 17 Tex. Civ. App. 477, 43 S. W. 831; Rail v. City National Bank, 3 Tex. Civ. App. 557, 22 S. W. 865; Y. M. C. A. v. Schow Bros. (Tex. Civ. App.) 161 S. W. 931; Humble O. & R. Co. v. Cox (Tex. Civ. App.) 7 S.W.(2d) 163.

If venue is dependent upon the existence of an agency, then we think that this rule of pleading applies to a controverting affidavit. If a controverting affidavit merely alleges the fact of agency, and does not allege facts to show an estoppel to deny agency, then the evidence sufficient to support venue must show an actual agency. Even if there were evidence that would support an agency by estoppel, it would be unavailing, because not supported by the pleadings. The controverting affidavit in this case does not allege facts to show an agency by estoppel as distinguished from actual agency, and hence the inquiry is limited to a consideration of whether there was evidence sufficient to support the contention that Rhea was in fact the agent of Tarver, Steele & Co.

The witness Pendleton testified, or, at least his testimony is susceptible of the construction, that plaintiff, during a number of years, kept an account with Tarver, Steele & Co., reflecting sales of cotton by plaintiff to said defendant. It may be admitted that such fact, standing alone and unexplained, and if further supported by the fact that Tarver, Steele & Co. knew that such accounts were kept, would constitute some evidence tending to show that Tarver, Steele & Co. recognized Rhea to be their agent. Such evidence would be admissible to establish an agency by estoppel, but it is wholly without probative force to show an actual agency, especially when considered in the light of the fact that Rhea at all times professed not to be the agent of Tarver, Steele & Co. The fact that, under the method of dealing disclosed by the evidence, the evidences of title to the cotton showed a transfer direct from plaintiff to Tarver, Steele & Co., afforded a sufficient reason for keeping such an account as a matter of convenience, wholly aside from any question as to whether Rhea was, in fact, an agent of Tarver, Steele & Co.

Appellee, in argument, asserts and repeats time and again that the cotton was invoiced to Tarver, Steele & Co. If such was a fact, that undeniably would constitute some evidence of a "holding out" of Rhea as agent, but, as we have just said, the question presented is not one to be determined upon the theory of ostensible or apparent agency. But, aside from that, we have been unable to find any verification in the record of the statement that the cotton was invoiced in such a way as to show a sale by Pendleton Gin Company to Tarver, Steele & Co. By way of explanation, the defendant, upon the trial, introduced two sets of papers covering two different shipments of cotton, one showing a transaction in which R. P. Rhea made a profit and the other one in which he suffered a loss. The plaintiff offered these papers in evidence. Each set of papers includes an invoice, and each invoice shows cotton bought by R. P. Rhea from Pendleton Cotton Company, the latter explained to refer to plaintiff. The fact that the invoices were made out on blanks containing the name of Tarver, Steele & Co. we regard as unimportant. The fact remains that the actual transaction reflects a sale from Pendleton Cotton Company to R. P. Rhea.

Then what is the evidence of actual agency? Is the fact that payment for cotton purchased was made by drafts upon Tarver, Steele & Co. that were always paid when presented, evidence of actual agency? Unexplained and standing alone, maybe so. But, with the perfectly reasonable and obvious explanations appearing, we cannot regard such fact as in any degree evidencing the relation of agency. The precise point was presented and determined in Davis & Hamm Commission Co. v. Mt. Vernon Bank, 63 Tex. Civ. App. 347, 133 S. W. 448. If the drawing of one draft is no evidence, then a custom or practice of drawing drafts, if any more evidentiary, could only be so to establish an agency by estoppel.

"When the acts of alleged principal and agent are explicable on some other ground than that of agency, the third person cannot

rely on the agency." 2 Tex. Jur. 299. Such rule, of course, is more applicable in consideration of a question of agency by estoppel, but it is one not improper to be borne in mind here. The principle was applied by the Supreme Court in Reeves v. McCracken, 103 Tex. 416, 128 S. W. 895. In that case the owners of land made a contract to sell same to other parties upon certain terms. Such other parties in turn induced by fraud a contract by which Mrs. McCracken was to purchase it. Upon request of the original contractees, the title papers were made directly from the owners to Mrs. McCracken. The latter, discovering the fraud, brought suit against all parties for a rescission, seeking to hold the owners for the fraud of the persons with whom she dealt on the ground that they were agents of the former. The court denied rescission, and refused to charge the owners with the fraud upon the ground of agency. The principle of that decision is deemed applicable here. The daily quotations made by Tarver, Steele & Co. to Rhea were but offers to purchase cotton from him in compliance with the terms of the quotation. The presentation of the bills of lading and drafts were but an acceptance of the offer to purchase. The title was made direct from the owners of the cotton to Tarver, Steele & Co. as a matter of convenience in bookkeeping, just the same as the deeds were made from the owners to Mrs. McCracken in the case just mentioned. In other words, the making of title directly to the third parties is explicable on some other ground than agency, and is so explained by this record. The Supreme Court of Georgia considered almost the same question in Cent. Ga. Land, etc., Co. v. Exchange Bank, 101 Ga. 345, 28 S. E. 863.

There is no suggestion in the evidence that Rhea was under duty to pay the exact price quoted to him by Tarver, Steele & Co. Whatever price Rhea agreed to pay for cotton, that only was he liable to the plaintiff to pay. Tarver, Steele & Co. was liable to pay only the price quoted by them to Rhea. As said in St. L. & S. F. Ry. Co. v. Blocker (Tex. Civ. App.) 138 S. W. 156, 162: "In transactions where the relation of principal and agent exists, the former cannot be held liable to one from whom property is purchased for one price and to the agent for another."

If Rhea was the agent of Tarver, Steele & Co., the cotton became theirs at the price he agreed to pay. If he agreed to pay a price far in excess of the quotations they would nevertheless become liable, in the absence of any knowledge on the part of the sellers as to the price quoted. The evidence stands out conclusively and unchallenged that Tarver, Steele & Co. was liable only to Rhea for the prices quoted by them to him, and hence could not be liable to plaintiff for a different price.

Can it be doubted, under this record, that, if R. P. Rhea had quotations from other cotton buyers, as well as the defendant, that he could have sold and made good title to any one of them rather than to the defendant? We think not, and yet, if he could have done so, the very existence of such right is absolutely determinative of the question that he was not the agent of Tarver, Steele & Co., since in the last named case the cotton would belong to them.

We have therefore reached the conclusion that the trial court erred in overruling the plea of privilege. The judgment will therefore be reversed and the cause remanded, with directions that the plea of privilege be sustained, and the case transferred to Dallas county for trial. It is accordingly so ordered.