**Kenneth PHARR, Appellant,**

**v.**

**MEDARIS COMPANY, Inc., Appellee.**

**No. 15835.**

Court of Civil Appeals of Texas.

Dallas.

March 31, 1961.

Hugh Anderson, Lubbock, for appellant.

Tom D. Matthews, Matthews, Sligh & Matthews, Dallas, for appellee.

DIXON, Chief Justice.

Appellee Medaris Company, Inc., sued appellant Kenneth Pharr in Dallas County, for debt for merchandise sold and delivered. Appellant, a resident of Lubbock County, filed a plea of privilege asking that the cause be transferred to Lubbock County for trial.

In its controverting plea appellee alleged that venue properly lay in Dallas County under Article 1995, § 5, Vernon's Ann.Civ. St. because Tommy Starnes, duly authorized agent and store manager for appellant, signed a written agreement which provided among other things as follows: "This and subsequent orders payable in Dallas, Texas * * *".

Appellant, in a sworn answer to the controverting plea, alleged that he had not in his own behalf or by any duly authorized agent contracted in writing to pay appellee any sum of money at Dallas, Texas.

Appellant's plea of privilege was overruled.

In two points on appeal appellant says (1) the court erred in admitting into evidence the written orders on which appellee relies over the timely objections of appellant that the authority of the alleged agent to bind appellant by written contract had not been established by extrinsic evidence; and (2) the evidence is insufficient to support the court's judgment. The nature of these points requires a careful study of the evidence.

Appellant Pharr owned two business establishments in Lubbock: Associated Supply Company and Early Bird Yard and Ranch Store. Most of his livelihood came from Associated Supply Company and he spent most of his time there, though he spent some time at Early Bird Yard and Ranch Store in order to oversee the operations. The manager of the latter store was Shirley Jenkins, who had been with appellant as manager for five years.

In the spring of 1957 appellant Pharr decided to add an appliance department to Early Bird Yard and Ranch Store. He discussed the matter with Dale Allen, representative of appellee, and they agreed for a $4,000 stock of Philco appliances to be furnished by appellee; and since appellant was not an experienced appliance man and he had known Allen for some time, he left it to Allen to place what merchandise he thought should be put in the store. Allen also recommended Tommy Starnes as a good appliance man. Appellant says he hired Starnes as a salesman only, not as manager.

Since the issue in this case is whether Starnes had authority to bind appellant to a contract to make payments in Dallas, Texas, we deem it advisable to quote material testimony.

### Testimony of Appellant Pharr.

"Q. Now, what arrangements did you have with Billie (sic) Starnes to work with you? A. Salesman.

"Q. What basis did he work on? A. He worked on a salary and commission. * * *

"Q. In fact, Mr. Starnes was manager of that store on April 2, 3 and 4th, 1957, was he not? A. No, sir; never was manager of the store. * *

"A. I let Mr. Allen put what he thought should be placed in the store.

"Q. And then you sent him down to discuss it with Mr. Starnes who would be selling this stock for you? A. I did not.

"Q. And, you knew that someone working for you would have to sign the order in order to get shipment on it, did you not? A. I surely did. * *

"Q. And, when you did receive that merchandise then, you did know at that time that someone in your organization had signed a purchase order or sales slip in order to get it, did you not? A. No, sir. Absolutely. I have been dealing with Mr. Allen for years.

"Q. You made no inquiry at that time as to whether or not that they had; is that right? If anyone had signed these order slips? A. I do not think so. * * *

"Q. Mr. Pharr, did you, in the course of your dealings with the Plaintiff in this case, ever say anything to Mr. Allen, or any other representative of Medaris Company, that could in any manner tend to lead them to believe— * * *

"Q.—that Tommy Starnes or anyone other than Jenkins was authorized to place orders for the Early Bird Store? * * *

"The Witness: Your honor, I don't —I would say that I didn't. If I did it was in a conversation or something. I couldn't say exactly. I would say this: That I never told them that Tommy Starnes had authority to buy anything.

"Q. As a matter of fact, you had to discharge him because he disobeyed

your instructions in that regard. A. That's right, sir.

"Q. He did buy some things and you found out about it—A. That's right.

"Q.—and you fired him—discharged him. A. Yes, sir.

"The Court: You asked him if he knew that Tommy Starnes had signed a contract agreeing to pay Medaris Company in Dallas, before the lawsuit was filed.

"Q. Did you know that—? A. I didn't authorize him to.

"Q. I know, but did you know he had done so? A. No. Absolut*l*ely * * *

"Q. Now, didn't you likewise know that you, or somebody had to sign like sales orders in order to get all this merchandise you had been buying—from Philco from time to time? A. I didn't have to. The original orders didn't have to be signed.

"The Court: And sometime before that you had talked with Mr. Allen about this Mr. Starnes.

"The Witness: We discussed Mr. Starnes. I was looking for an appliance salesman and Mr. Allen suggested Mr. Starnes."

Testimony of Appellee's Representative Allen.

"Q. Well, I will ask you to state whether or not Mr. Pharr ever told you to go see Mr. Starnes about any of these transactions. A. I can't say that he definitely told me to go see Mr. Starnes; * * *

"Q. And, after you and Mr. Pharr had reached your agreement about stocking your (sic) store with merchandise and about the manner and method of paying for it, then you referred to Mr. Starnes to help you pick out what could be sold in the store. Is that correct, or not? A. That was specifically true in the case of some air conditioners and ranges.

"Q. Well, now, did Mr. Pharr do or say anything to lead you to believe that Mr. Starnes was authorized to buy without any direction on Mr. Pharr's part and in any manner he saw fit, or was your agreement in that regard made with Mr. Pharr? * * * A. The opening order was conducted, with the exception as I just mentioned, entirely by Mr. Pharr.

"Q. Now, did Mr. Pharr at any time after the opening order do or say anything to lead you to believe that Tommy Starnes was his general agent authorized to sign him to make payment in Dallas County, Texas? A. Yes, I think so.

"Q. How and when? A. Well, I don't believe I understand what you want. * * *

"Q. All right. But, you do know Mr. Jenkins was general manager at the time you were dealing with Mr. Pharr? A. Well, actually I had no dealings with Mr. Jenkins at all.

"Q. But, I said, you knew that situation there. A. Yes. * * *

"Q. In other words, you furnished the stock and the salesman all at the same time? A. I didn't furnish the salesman, I don't believe.

"Q. Sir? A. I didn't have anything to do with hiring Mr. Starnes.

"Q.—but you either sent Mr. Starnes over to talk to Mr. Pharr, or you talked to Mr. Pharr about him, about Mr. Starnes. A. Well, Mr. Pharr and I discussed Mr. Starnes, and he asked me about him, and I told him Starnes was an accomplished and experienced appliance man.

"Q.—when you and Mr. Pharr had your agreement about doing business

by you selling him and furnishing him merchandise to sell about April 2, 1957, was there any conversation between you at that time to the effect, or even implying that Mr. Starnes was Mr. Pharr's agent authorized to bind him to all contracts that he might see fit to sign? A. Well, I don't understand what he is getting at. The only thing I knew that Mr. Starnes was to be a salesman out there, and, as far as I knew, he had authority to come buy merchandise.

"Q. Well, so far as you knew, but what did you know about it? He just more or less selected what was to be put out there, did he not? A. No, I don't think he did except as before mentioned in the case of the air conditioners and the ranges. * * *

"Q. At the time you and Mr. Pharr made these transactions on April 2nd, 1957, was there any understanding between you and him at that time where he was to pay for the goods he was then buying? * * *

"The Court: Did you have any discussion where the bill was to be paid?

"The Witness: No, sir.

"Q. Where was it paid? A. In Lubbock. * * *"

"Q. Well, state whether or not Mr. Pharr ever said anything to you about Starnes going to run, or be in charge of the appliance department? A. I assumed he was; yes.

Q. I asked you whether or not Mr. Pharr ever said anything to you about it? A. I don't remember."

## Opinion

█ The burden was on appellee to prove that Tommy Starnes was authorized, as appellant's agent, to bind appellant by contract to make payment in Dallas County, Texas. Johnson v. Dallas Cooperage & Woodenware Co., 120 Tex. 27, 34 S.W.2d 845; Tarver, Steele & Co. v. Pendleton Gin Co., Tex.Civ.App., 25 S.W.2d 156; 2 Tex.Jur.2d 706. We find no evidence in the record of express or implied authority whereby Starnes was authorized to so bind appellant. But appellee in his brief contends that the record shows sufficient evidence of apparent authority on the part of Starnes to bind appellant.

We do not agree with appellee. Appellant testified that he knew somebody in his organization had to sign an order to get shipment of the merchandise in question, but he was very positive that he did not authorize Starnes to sign a contract agreeing to pay appellee in Dallas. He also testified that he never told appellee that Starnes had authority to buy anything.

█ The testimony of Allen, appellee's representative who dealt with appellant, does not make out a case of apparent authority. Allen testified that he knew Jenkins was manager of appellant's store. He knew that Starnes was appellant's salesman. Starnes had not even had a part in selecting the merchandise to be bought by appellant with the exception of air conditioners and ranges. Allen frankly admitted that he did not remember Pharr's having said anything to him to the effect that Starnes was going to run or be in charge of the appliance department, but that he assumed Starnes was. Agency, as a matter of law, is not to be assumed. Tarver, Steele & Co. v. Pendleton Gin Co., supra.

Appellee places great stress on the testimony of Allen when he was asked if Pharr ever said or did anything to lead him to believe that Tommy Starnes was his general agent authorized to sign to make payment in Dallas, Texas. Allen's reply and the question and answer immediately following were, "yes, I think so. Q. How and when? A. Well, now, I don't believe I understand what you want." Allen never did tell what he thought Pharr had said to him.

■ Apparent authority is based on the principle of estoppel. It must be pled and proved. Reo Motor Car Co. of Texas v. Barnes, Tex.Civ.App., 9 S.W.2d 374; National Life & Accident Ins. Co. v. Ringo, Tex.Civ.App., 137 S.W.2d 828; Turner & Co. v. Graham Gin Co., Tex.Civ.App., 75 S.W.2d 955. 2 Tex.Jur.2d 676. In this case there are no pleadings of apparent authority or estoppel, and if there had been such pleadings, the evidence would not support a finding of apparent authority. Appellant's two points on appeal are sustained.

■ The facts in this venue hearing have been fully developed. No useful purpose would be served by remanding the cause for another hearing. Therefore, the judgment of the trial court is reversed and the cause is remanded to the trial court with instructions to transfer the suit to the District Court of Lubbock County for trial.