### JOHN W. WOLF ET AL. V. ROBERT PERRYMAN.

#### No. 6822.

1. **Peremptory Challenges in Civil Cases.** — Three defendants were sued for false imprisonment; one pleaded in abatement denying any participation in the acts of the others within the county where suit was brought. The defendants insisted on the right to challenge six jurors by the defendant pleading in abatement, and six by the others. *Held*, that the court was not in error in limiting the challenges by all the defendants to six.

2. **Practice—Challenging Jurors.** — After defendants had exhausted their challenges two talesmen were called. It is not shown that defendants desired to challenge either of them; no injury therefore is shown by the restriction of the number of challenges.

3. **Charge—Submitting Joint Liability, etc., of Defendants.**—Plaintiff was arrested in Burnet County by Sheriff Wolf. Wolf had telegraphed to Cass County and had obtained a capias for arrest of one Robert Perryman for murder. Upon this the arrest was made. Wolf telegraphed to the sheriff of Cass County the fact of the arrest, and asked that he send for the party arrested. A deputy was sent, who at Burnet received the accused, to be taken to Cass County. On the route at Austin plaintiff was released. In suit against Wolf and the sheriff of Cass County and his deputy for the false imprisonment, *held*, the facts were such as to warrant the submission of the issue, and that under the facts there was a continuance of the original unlawful taking in Burnet. See facts.

4. **Duty of Sheriff Making Arrest of One Indicted Elsewhere.** — A sheriff arresting for a capital felony under a capias from another county is charged with the duty of forthwith taking the accused to the county of the offense and delivering him to the sheriff of that county. Code Crim. Proc., art. 472.

5. **Liability of Joint Wrongdoers.**—The general rule both in civil and in criminal cases is that each is responsible for the acts of the others done in pursuance of the mutual understanding, or in furtherance of the common plan, at least until the termination of the enterprise.

6. **Same.** — To charge one with participation in a wrong it is generally essential that he should have personally contributed to it; but this may have been by advising or procuring it to be done when he did not otherwise take part in it.

7. **Presumption of Good Character.**—In the absence of any evidence that plaintiff (suing for damages for false imprisonment under a charge of murder), was not of good character, it was proper to instruct the jury that the presumption of law was that it was good.

8. **Character—Isolated Acts.** — It being in evidence that the plaintiff prior to his arrest on a capias charging him with murder had stated to witnesses that he had killed a negro, it was not error to refuse an instruction authorizing the jury to take

such admissions into consideration as grounds for reducing the amount of damages. Such declarations were of no greater effect than as evidence to the particular acts so admitted.

9. **Fact Case.**—See facts supporting a verdict for $1500 for damages against Wolf, sheriff of Burnet County, and Choate, sheriff of Cass County, and Duncan, his deputy, jointly for arresting plaintiff in Burnet and conveying him to Austin, Travis County, under a capias against another person of the same name, and issued from Cass County.

APPEAL from Travis.  Tried below before Hon. W. M. KEY. The opinion states the case.

*Fisher & Ward* and *J. G. Cook*, for appellant Wolf.—1. The court erred in limiting the challenges of all the defendants to six jurors, when the interests of the defendants Choate and Duncan were different from the interests of the defendant Wolf, as shown by the pleadings. Rev. Stats., art. 3084; Jones v. Ford, 60 Texas, 127; Railway v. Terrell, 69 Texas, 650.

2.  Appellant Wolf, as sheriff of Burnet County, having arrested appellee in said county by virtue of a capias issued by the clerk of the District Court of Cass County, commanding him to arrest Robert Perryman for the crime of murder, and having turned over said Perryman to the deputy sheriff of Cass County, in Burnet County, together with said capias, with his return on the same, his custody of said Perryman then and there ceased; and the further imprisonment of said Perryman was the sole act of said sheriff of Cass County, for which appellee Wolf was in no manner responsible, and the court erred in its charge in submitting to the jury the liability of Wolf to be sued in Travis County. Rev. Stats., art. 1198, sec. 8.

3.  The court erred in charging the jury: "If you find for the plaintiff, you will allow him actual damages for such an amount as you think will reasonably compensate him for the actual injury sustained, including pay for loss of time, for physical and mental suffering, if any, caused by the acts of defendant complained of, and for such injury, if any, as resulted thereby to his character and reputation as a citizen, and you are instructed that in law he is presumed to have had a good character and reputation." And in refusing: "If you should under the charges given you by the court find for any amount against the defendants, or any of them, you are authorized to inquire from the evidence whether or not the plaintiff had by his statements acquired the reputation of having murdered a negro; then you may consider in estimating the damages, if any you find, for alleged injury to his reputation and feelings by the arrest and imprisonment, whether he was injured any in his reputation or feelings by such arrest and imprisonment." Mayfield v. Cotton, 21 Texas, 7; Mayne on Dam., 74, 75; Botts v. Williams, 17 B. Mon. (Ky.), 687; 1 Whart. on Ev., sec. 53; Whitney v. Janesville Gazette, 5 Bissell, 330; 2 Greenl. on Ev., sec. 267; O'Brien v. O'Brien,

13 Mo., 16; Same Case, 53 Am. Dec., 130; Rogers v. Wilson, Minor, 407; Same Case, 12 Am. Dec., 61; Beckwith v. Bean, 8 Otto, 266–308; 2 Ct. App. C. C., sec. 821; 1 Ct. App. C. C., sec. 1238; 1 Greenl. on Ev., sec. 54.

4. The testimony did not warrant the verdict. [See opinion.] 1 Whart. on Ev., sec. 701; 2 Whart. on Ev., sec. 1273; Abb. Tri. Ev., p. 101; Marressy v. Ferry Co., 47 Mo., 521; Bogue v. Bigelow, 29 Vt., 183; Hatcher v. Rocheleau, 18 N. Y., 86.

*Walton, Hill & Walton,* for appellee.—1. The interests of defendants were joint and not diverse, and therefore they had no right to separate challenges.

2. The trespass was continuing. The wrong was a unit. The wrong commenced with Wolf and passed into Choate and Duncan, they accepting his action, and he giving them opportunity to continue the wrong he had commenced.

3. Wolf made the arrest. The wrong man was arrested. Wolf had time, opportunity, and information to right the wrong. He failed and refused to do so, but willfully, deliberately, carelessly, and with indifference continued the wrong, and then turned plaintiff over to another to perpetuate his wrong. Blanton v. Mayes, 58 Texas, 428; Austin v. Talk, 20 Texas, 167; Lee v. Hamilton, 12 Texas, 419; Dodd & Co. v. Arnold, 28 Texas, 100–101.

MARR, JUDGE, *Section A.*—This was an action brought by Robert Perryman, appellee, against John Wolf, sheriff of Burnet County, R. W. Choate, sheriff of Cass County, and H. J. Duncan, deputy sheriff of Cass County, appellants, for the recovery of $10,000 actual damages and $20,000 punitory damages for false imprisonment.

The petition in substance alleges that appellants arrested appellee in Burnet County, and imprisoned him in jail with thieves and murderers for three days; that as an excuse for so doing they charged him with being a murderer; and that on the 31st day of January, 1888, they took him from the jail at Burnet and conveyed him on the cars to the city of Austin, where on the evening of the same day they released him. .

Defendant Wolf answered, pleading his privilege to be sued in Burnet County, his place of residence; denying that he restrained appellee of his liberty in Travis County, but alleged that he arrested appellee in Burnet County upon a capias issued by the District .Court of Cass County commanding his arrest for the crime of murder; and in Burnet County he turned over appellee to appellant Duncan, who was deputy sheriff of Cass County, and from that time on he was in no manner connected with the imprisonment of appellee. Appellant Wolf further pleaded general denial, and justified the arrest by virtue of said

capias, and that appellant brought about his arrest by his repeated statements that he had killed a negro.

The case was tried before a jury, resulting in a judgment for appellee against appellants for the sum of $1500 as actual damages. The court did not submit the issue of punitory damages.

Appellants Choate and Duncan also pleaded the general issue, and sought to justify the arrest under a capias from the District Court of Cass County against one Robert Perryman for murder. They further alleged that the arrest of the plaintiff as well as his detention was due to his own voluntary conduct and declarations superinducing the same; and that they detained him in custody no longer than was reasonably necessary to investigate his identity. They further pleaded in mitigation of the damages claimed for the injury to his character or reputation, that he had already by his declarations acquired the reputation of being a murderer, etc. The court, in a charge characterized by acute discriminations, very clearly submitted to the jury every one of the issues which could be said to have been presented by the evidence as adduced.

1. The first question as presented by the appellants arises under the second assignment of error. It is claimed that "the court erred in limiting the challenges of jurors by all of the defendants to six jurors, when the interests of defendants Choate and Duncan were different from the interests of defendant Wolf, as shown by the pleadings."

We do not find any such antagonism of interests between the defendants, when we consider the mode in which the case was tried and presented below, as would warrant the inference that the court below abused its discretion or that each defendant was entitled to six peremptory challenges. Jones v. Ford, 60 Texas, 127; Railway v. Terrell, 69 Texas, 650. It is contended that if Wolf's plea in abatement had been sustained the whole burden would then have fallen upon the other defendants; hence a diversity of interests, etc. The other defendants, however, did not oppose nor contest this plea of Wolf nor raise any issue with him. Besides, it will appear as we proceed that under no phase of the case as submitted by the court to the jury could they find for the defendant Wolf without also finding for the other defendants. We are not, therefore, required to determine whether, if Wolf had been dismissed and the others mulcted in damages, they could have sued him for contribution. Cool. on Torts, pp. 146–148. But again, the bill of exceptions shows that the defendants named demanded the right to exercise six challenges for Wolf and six for Choate and Duncan, and that but six were allowed to all, and that after these had been exhausted "two jurors were placed in the panel," but the bill fails to show that any of the defendants "desired to challenge" either of these jurors. No injury to the defendants is therefore made.

to appear, and the ruling becomes "immaterial." Snow v. Starr, 75 Texas, 414.

2. The third, fourth, and fifth assignments of error have been consolidated in appellants' brief, and will appear from the propositions submitted thereunder. The two propositions will be considered together, in connection with such statements from the record as may be necessary to elucidate them.

"First proposition under third, fourth, and fifth assignments of error as consolidated: Appellant Wolf, as sheriff of Burnet County, having arrested appellee in said county by virtue of a capias issued by the clerk of the District Court of Cass County commanding him to arrest Robert Perryman for the crime of murder, and having turned over said Perryman to the deputy sheriff of Cass County, in Burnet County, together with said capias, with his return on the same, his custody of said Perryman then and there ceased, and the further imprisonment of said Perryman was the sole act of said sheriff of Cass County, for which appellant Wolf was in no manner responsible, and the court erred in its charge in submitting to the jury the liability of Wolf to be sued in Travis County."

As the part of the charge here referred to is the chief portion, and determines more or less the force of several other assignments, we insert it in full, viz.:

"If defendant Wolf arrested plaintiff without a warrant, or if the warrant held by Wolf when he arrested plaintiff was not issued for the arrest of plaintiff, was unlawful and wrongful; and if Wolf, knowing or believing that Duncan had come to take plaintiff to Cass County, delivered him to Duncan, then the subsequent removal of plaintiff by Duncan to Travis County was a continuation of the unlawful act; and all defendants are liable therefor, unless the detention of plaintiff after his arrest was justifiable under the law hereafter given you in this charge. And if you find from the testimony that plaintiff was arrested without a warrant, or was not the person for whose arrest said warrant was issued, and that defendant Wolf, knowing or believing that defendant Duncan had come to take plaintiff to Cass County, delivered him to said Duncan, then you should return a verdict for plaintiff for the actual damage sustained by him; unless you find that by reason of statements made by plaintiff and communicated to defendants Wolf and Duncan, and after hearing the statement of the witness Ray and other statements made to them concerning the identity of plaintiff, Duncan was reasonably in doubt as to whether or not he was the person for whose arrest the warrant was issued, and that being so in doubt, and for the purpose of investigating further as to defendant's identity, said Duncan received and removed plaintiff to Austin, Travis County; and that such removal was, under the circumstances, a reasonable and proper mode of making such investigation, and that he detained plaintiff

no longer than was necessary to make such investigation, then you should find for the defendants Choate and Duncan and for defendant Wolf on his plea in abatement; because if plaintiff's removal into Travis County was justifiable, then plaintiff can not recover in this court against defendant Wolf even if he unlawfully arrested plaintiff."

It is to be distinctly observed that the only objection made to this instruction, which is contained in the statement made by appellants' counsel under the above proposition, is that "the court erred in submitting to the jury the liability of the defendant Wolf to be sued in Travis County," because, we presume, counsel contend that the undisputed facts render him only liable, if at all, in Burnet County for his acts performed there. If, therefore, there is evidence sufficient to have authorized the court below to submit to the jury his responsibility or not for the acts of Duncan committed in Travis County, the objection must fall to the ground.

"Second proposition under the third, fourth, and fifth assignments of error, consolidated: The court erred in refusing to give the following instruction asked by defendant Wolf: 'If you believe from the evidence that the defendant Duncan acted on his own volition, without suggestion or advice from the defendant Wolf, as to what he (Duncan) would do with the plaintiff when said Duncan received plaintiff from said Wolf, and that the defendants Duncan and Choate are not liable, then you will find for the defendant Wolf also on his plea to the right to try his case in this county, even though you should think the defendant Wolf was liable for what he did in Burnet County; for this plaintiff would have to sue, if at all, in Burnet County.'"

We have reached the conclusion that the general charge was correct and sufficient under the facts proved, and that the above special instruction was correctly refused and was inapplicable, and therefore not a proper direction to the jury in the shape it was drawn. To elucidate these conclusions it becomes necessary to give a summary of the evidence relating to the subject. There is no conflict in the testimony bearing upon the issue of venue. It was proved and admitted by defendant Wolf that he arrested and imprisoned the plaintiff in Burnet County. He testified upon this point, and says: "I arrested him to hold until the Cass County sheriff should come. I saw in the published list of fugitives from justice that one Robert Perryman was a fugitive from Cass County under an indictment for murder in 1882. The list contained no description of the Perryman indicted. I wrote to the sheriff of Cass County to send me a description of Perryman and a capias, which he did. Upon receiving the capias and letter from the sheriff of Cass County, on Saturday, the 28th of January, 1888, I arrested Perryman [the plaintiff] that afternoon in town just after opening my mail. I did not have the capias with me when I made the arrest; it was at my office. When I arrested him I at once telegraphed

the sheriff of Cass County to *come after him.* His deputy, the defendant Duncan, arrived there on Tuesday about 12 o'clock m., and left with Perryman on the same day. Perryman *did* tell me that I had the wrong man; that he had never been in Cass County. He referred me to various persons—Dr. Westfall of Burnet, Judge Walker, Tips, Litten, and others. I refused to release him or take bail, saying I had telegraphed to the sheriff of Cass County to come after him. I made no investigation as to whether I had the right man." The defendant Wolf evidently relied upon the similarity of the names and the statement of plaintiff previously made to McFarland that he had killed a negro, as well as upon the description of the Perryman indicted given in the letter from Choate, which, however, was correct only in part as applicable to the person and appearance of the plaintiff. Witness continues: "From the time I arrested plaintiff he was held by me in jail until after the arrival of Duncan. I did not liberate plaintiff, but held him as a prisoner and turned him over, with the capias, to deputy sheriff Duncan *to be conveyed to Cass County*, Texas, in obedience to the command contained in the capias. Duncan received plaintiff from me as a prisoner and went away with him. He left for Cass County to have plaintiff identified as the murderer. I had *nothing* to do with plaintiff after Duncan received him and the capias from me. I supposed he was going to carry him to Travis County. I gave no instructions to Duncan. I delivered Perryman to him as a prisoner and he *might have turned him loose at once* for ALL I CARED."

The evidence further shows that Duncan conveyed the plaintiff from Burnet to Austin, in Travis County, and after interviewing Dr. Litten there he became satisfied that the plaintiff was not the party wanted or indicted, or whose arrest the capias commanded, and released him from custody. During a portion of the time while in custody of Duncan, the plaintiff was handcuffed in public view. The manacles were upon him when taken on board of the train and remained for some time and were then removed, but again placed on him when the parties arrived at Austin. Plaintiff was in the custody of Duncan about seven hours altogether, one hour of which occurred at Austin, in Travis County. The imprisonment was more than an hour in that county, if we include the time of the transportation therein from the arrival of the train at the county line.

In view of the facts we have enumerated, can it be said that there is no evidence tending to establish the liability of Wolf for the trespass of Duncan committed in Travis County, or that the court below ought to have so charged the jury as a matter of law? The trespass was not an independent trespass committed by Duncan beyond and outside of the understanding or agreement of the parties, and not authorized nor procured nor contemplated by Wolf. It was at his instance that Duncan came for the plaintiff. He had written for authority to make the

arrest. He "turned him over" to Duncan to be taken to Travis County en route to Cass County. The evidence and acts and conduct of Wolf were such as would warrant the jury in inferring that he contemplated and consented to the transportation of the plaintiff as a prisoner through Travis County from the time at least when he notified the sheriff of Cass County to "come after him" and handed the plaintiff over to Duncan for that purpose and with that intent. If so, then he was a party to the acts of Duncan to the end of the detention, and the court below rightly charged that the imprisonment by Duncan under such circumstances would be a continuation of the original imprisonment by Wolf. It is true that Wolf swears that he did not instruct Duncan, and did not care if he had released the plaintiff after he delivered him to Duncan. But this can not alter the legal consequences of his acts. He took good care, however, not to release him himself nor to tell Duncan to do so. If Wolf was so indifferent in the matter, he certainly had it in his power to prevent the transportation of plaintiff by Duncan. If plaintiff was not the Robert Perryman who had been indicted in Cass County, then Wolf, after a reasonable investigation, should have released him instead of delivering him over to Duncan to be taken to Cass County. Then that would have ended the matter, we presume, as Duncan had no authority to make an arrest in Burnet County. Peter v. State, 23 Ct. App., 684; Ledbetter v. State, 23 Id., 247. If plaintiff was the real party indicted, then Wolf should have himself or through a deputy carried him "forthwith" after the arrest to Cass County and delivered him to defendant Choate as the sheriff of that county. The law is perfectly plain on this subject when the arrest is made as in the present instance, and for a capital offense. Code Crim. Proc., art 472. Duncan, therefore, in conveying the plaintiff from Burnet County under the capias was performing a duty devolving upon Wolf, had plaintiff been the party indicted. Duncan in transporting plaintiff might, for this reason, be regarded as the agent of Wolf and acting for him, otherwise the acts of Wolf in delivering over the plaintiff and in failing to convey him were wholly illegal, independent of the legality of the arrest, and an omission to perform a plain duty. Id., art. 472. The case admits of this view, and it tends to support the responsibility of Wolf for the acts of Duncan. Code Crim. Proc., arts. 459, 471, 472. Article 474 applies to cases less than capital, it would seem.

Let us now glance at some of the established rules regulating or prescribing the liability of wrongdoers for the acts of each other. The general rule is, both in civil and criminal cases, that each is responsible for the acts of the others done in pursuance of the mutual understanding or in furtherance of the common plan, at least until the termination of the enterprise.

"If A imprisons B, and in continuation of that imprisonment A delivers B into the charge of C, who keeps B in custody, the acts and declarations of C are evidence against A in an action for false imprisonment," even though C might not be liable for the original capture made by A. Powell v. Hodgetts, 2 Carr & P., 431.

We desire to state in this connection that no issue is raised on this appeal whether, under the facts of this case, Choate and Duncan would be liable for the acts of Wolf in arresting and imprisoning plaintiff in Burnet County before the arrival of Duncan. That question is therefore out of the case.

Judge Cooley says: "Most wrongs may be committed by one person or several. Where several participate they may do so in different ways, at different times, and in very unequal proportions," etc. Cool. on Torts, p. 127. Again: "Where the contributory action of all accomplishes a particular result, it is unimportant to the party injured that one contributed much and another little; the one least guilty is liable for all, because he aided in accomplishing all. To charge one with participation in a wrong, it is generally essential that he should have personally contributed to it; but this, as has already been shown, may have been by advising or procuring it to be done, when he did not otherwise take part in it." Id., pp. 35, 137. A party whose conduct aids or causes the commission of an illegal act, "is liable for all the immediate consequences thereof." Waterman on Trespass, sec. 20. The wrong commenced by Wolf was continued by Duncan. Wolf consented thereto and voluntarily put it in the power of Duncan to continue the wrong, knowing what Duncan intended to do. The question, therefore, of an entirely new and independent trespass committed thereafter by Duncan does not arise under the evidence, for there is no proof of such independent action upon the part of Duncan. Nor does the special charge before noted properly present this issue, if it were in the case, in our opinion. It was inapplicable in any event, as we have already said. We hold further that the charge of the court was sufficient on the issue of venue, in view of what we said as to the law upon the subject and under the evidence in the case; and that it correctly announced the rule established in this State applicable to the rights of the officer to detain for the purpose of investigating as to the identity of the prisoner. Hays v. Creary, 60 Texas, 445; see also, as to the trespass and the joint liability, Hubbard v. Lord, 59 Texas, 385; Kolb v. Bankhead, 18 Texas, 228; Ricker v. Freeman, 50 N. H., 420; Waterman on Trespass, secs. 23–25; 7 Am. and Eng. Encyc. of Law, p. 679, and note 2.

3. "The sixth and seventh assignments of error consolidated" assert that the court erred in instructing the jury that plaintiff "is presumed to have had a good character and reputation," and in refusing to charge, as requested by the defendants, that in case the jury allowed any dam-

ages to the plaintiff they "would be authorized to inquire from the evidence whether or not the plaintiff had by his statements acquired the *reputation* of having murdered a negro; then you may consider in estimating the damages, if any you find, for alleged injury to his reputation and feelings by the arrest and imprisonment, whether he was injured any in his reputation or feelings by such arrest and imprisonment."

In the absence of any proof that plaintiff's character was bad the charge of the court was correct, and for a like reason the requested instruction was inapplicable. 1 Whart. on Ev., sec. 55. Certain statements or declarations testified to as having been made by the plaintiff are relied upon as evidence going to show that his *character* as a murderer "of a negro" had been established by himself. Upon these statements alone the charge requested is predicated. Admissions upon several occasions are shown. Tom Allen testified, that plaintiff "blows a good deal, and one time heard him tell, when several persons were present, that he had killed a negro. The statement was made in Burnet County, near where the plaintiff lives." Plaintiff "voluntarily" admitted to Geo. C. Jones, "when no one was present," that when he was a boy "he and another boy killed a negro." McFarland testified, that some time in 1887 plaintiff "voluntarily" told him "that he [the plaintiff] had killed a negro man and was on the dodge for quite a while." Windsor swears that plaintiff "told him that he had killed a negro," and that witness communicated the statement to Wolf in the presence of Duncan, "who had come after Perryman." Plaintiff testified, that he did not recollect having made these statements, but that if he did "he was only joking." None of the witnesses, however, testified that the reputation of plaintiff was in the least bad. It does not appear that his statements affected his reputation at all. Even if, as contended, he desired to be regarded as a "nigger-killer," his neighbors and acquaintances refused to gratify his ambition, so far as the record discloses. It is well settled that the issue should be confined to the general reputation, and that this can not be established by proof of specific acts. When the plaintiff admitted that "he had killed a negro," this amounted to no more, if as much, than if the witness who heard the admission had testified to the homicide of the negro by the plaintiff. It was but evidence of a specific act, but not of general reputation. 1 Whart. on Ev., secs. 49, 56; Johnson v. Brown, 51 Texas, 65; 3 Am. and Eng. Encyc. of Law, p. 114, and notes.

We are further satisfied from the record that the evidence which we have just detailed was admitted by the District Court, not upon the issue of plaintiff's character, but upon the question of the identity of the plaintiff and the reasonableness of the defendant's conduct in detaining him for the purpose of investigating the matter. We hold that these assignments present no reversible error. It is but reasonable to

suppose that a sensible jury would look to all of the circumstances in the case, including the conduct of the plaintiff, in determining under the general charge of the court the extent of the outrage upon his "feelings," without any admonition from the judge concerning specific declarations.

4.   The eleventh and twelfth assignments of error, as indicated by the propositions thereunder, present the question of the sufficiency of the evidence to sustain the verdict in the following particulars as contended by appellants, viz.:

(1) "Robert Perryman having been indicted for murder in Cass County, Texas, and appellant Wolf having arrested Robert Perryman in Burnet County, Texas, by virtue of a capias issued on that indictment, appellant Wolf was protected from suit for damages, unless the proof showed that plaintiff was not the Robert Perryman who was indicted and for whom the capias was issued.   Mere proof that plaintiff was not guilty of the crime charged would not overcome the prima facie case made that he was the person indicted and for whom the capias issued.

(2) "The uncontradicted testimony shows that before Duncan carried plaintiff to Travis County, Duncan was informed of plaintiff's declaration that he had killed a negro; that Duncan did not detain plaintiff in Travis County longer than was reasonably necessary to investigate plaintiff's identity; that the verdict of the jury was contrary to the charge of the court and the evidence upon this issue, and the court erred in not granting a new trial on account thereof."

These issues were fairly submitted to the jury, and there are ample facts in evidence to sustain their verdict upon both of these points. While there are several circumstances strongly tending, if unexplained, to prove the identity of the plaintiff with the party actually indicted in Cass County, still we think it can not be seriously maintained that he is the man charged by the indictment in that county with the murder of a negro.   The name is the same, and the plaintiff made some foolish statements to the effect that he had killed a negro.   The description of the party wanted for the murder of the negro is an imperfect and by no means accurate description of the plaintiff, though Wolf says that he thought it a very good one, considering the lapse of time. The plaintiff proved that he had never been in Cass County, and established the most perfect alibi—so strong that the same facts, unsworn to, had entirely satisfied Duncan at last, who released him.   He has not been again arrested for the crime.   If the appellants were satisfied, why should not the jury have been?   If the plaintiff had never been in Cass County, then he did not kill the negro in that county.   The grand jury in presenting the indictment meant and intended the Robert Perryman who had committed the homicide, and the capias issued upon the indictment for the same party; therefore plaintiff was *not* the man

to be arrested under the warrant.   We are aware of no other feasible mode by which an innocent man wrongfully accused or suspected could establish the fact that he is not the party really indicted.   That is certainly sufficient to rebut any prima facie case.   True, the grand jury *may* have indicted the wrong man, but this is not to be presumed without proof.   We can not hold that the name Robert Perryman is a very uncommon one, and deny also that in cases like this the mere similarity of name made a prima facie case against the plaintiff as a matter of law.   If any presumption arises therefrom, it is one of fact only.   Otherwise a name would be a most dangerous thing.   Think of the George Washingtons, Andrew Jacksons, and Grover Clevelands!

In regard to the second point of the contention, it may be that Duncan did not detain plaintiff more than a reasonable time *after* he had reached the city of Austin, but the jury may well have concluded under the facts of the case that the investigation could readily have been made at Burnet, and therefore that no excuse existed for longer imprisoning the plaintiff and in carrying him forcibly to Austin, and in irons a portion of the time, as a most dangerous criminal.   He denied that he was the party at Burnet, and explained the fact to the officers and offered them the best of references, including Dr. Westfall at that place.   It does not appear that the officers interviewed Dr. Westfall.   His father-in-law also explained to them at Burnet that plaintiff could not be the man wanted in Cass County.   The jury may have also concluded that there were other speedier modes of ascertaining the truth or of receiving intelligence from the referees at Austin than by carrying plaintiff from home and friends to another county as a prisoner.   As suggested by appellee's counsel, at Burnet the "defendants had time and opportunity to investigate as to the legality and reasonable grounds of holding appellant as a felon.   They failed to investigate, or if they investigated they disregarded the plain, evident truth, and still on speculation held him."   At least these inferences may have been drawn by the jury, and we can not hold that their verdict is unsupported by the evidence.   Hays v. Creary, 60 Texas, 446.

We see no reason to doubt that the officers made an honest mistake, but this could not protect them after plaintiff gave them notice that he was not the man and they had opportunity to investigate the truth.   Id. But for his statements previously made the arrest would have been wholly at their peril from the beginning, and the jury may have concluded that the statements did not induce the arrest.   7 Am. and Eng. Encyc. of Law, p. 664, and notes.   The good faith of the officer in acting upon probable cause only mitigates the damages.   Id., p. 692. Here no exemplary damages were allowed.   In a constitutional form of government the personal security of the citizen is too closely guarded and protected by law to justify the deprivation of his liberty, or his detention after the illegality of his arrest reasonably appears,

simply because an officer *suspects* that he has committed, or is charged with, crime.   Porter v. Swindle, 3 S. E. Rep. (Ga.), 94; Hilliard on Torts, p. 200.

We have considered all of the assignments of error which are presented for consideration in the brief of the appellants, either in the form of propositions or with propositions and statements thereunder, and we are constrained to hold that the judgment ought to be affirmed.

*Affirmed.*