BALDRIDGE et al. v. KLEIN et.ux.
No. 1038.

Court of Civil Appeals of Texas. Eastland.
Dec. 23, 1932.

Rehearing Denied Feb. 3, 1933.

Marshall & King, of Graham, Cox & Hayden and Scarborough, Ely & King, all of Abilene, and Touchstone, Wight, Gormley & Price, of Dallas, for plaintiffs in error.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for defendants in error.

HICKMAN, C. J.

The appeal is from a judgment in favor of defendants in error David F. Klein and wife, Blanch V. Klein, against plaintiffs in error, Thomas B. Baldridge and Graham Mill & Elevator Company, for damages on account of personal injuries sustained in an automobile accident occurring on a highway in Taylor county, in which a car occupied by defendants in error was overturned and practically demolished, with resulting personal injuries. Judgment was also had for damages to their car. Defendants in error were driving west on the Bankhead Highway at the rate of about thirty-five miles per hour. Baldridge overtook them, traveling in the same direction, and speeded up his car to about forty-five miles per hour in attempting to pass them. He made the mistake of cutting back to the right before he was clear of the overtaken car, and as a result the right rear fender of his car became enmeshed with the front bumper of the overtaken car, resulting in the overturning of the latter, with consequent injuries. Judgment ran against Graham Mill & Elevator Company upon pleadings and a jury finding that Baldridge was its agent. Both defendants below have brought the case here for review by writs of error.

■ The first proposition presents the question that a peremptory instruction in favor of Graham Mill & Elevator Company should have been given by the trial court. The facts disclose that Baldridge was engaged in the brokerage business at Abilene, in partnership with a man by the name of McClure. The firm sold various products of various companies, including the products of Graham Mill & Elevator Company of Graham, Tex. The brokerage firm employed and discharged its own salesmen. When it sold products in carrying out its brokerage business, its purchaser owed the debt for the purchase price to Baldridge & McClure and not to the company whose products were sold. Neither the Graham Mill & Elevator Company, nor any other company whose products were handled by this brokerage firm, had any right of control whatever over the conduct of its business. On the occasion of the accident Baldridge was returning from Clyde, where he had been to collect for a sum owing his partnership firm on account of products theretofore sold. The products for which the collection was made were the products of his codefendant theretofore shipped to Baldridge & McClure at Abilene, and by them sold and delivered to the dealer at Clyde. There was evidence that the telephone in the place of business of Baldrige & McClure was listed in the directory under the name of Graham Mill & Elevator Company, and that a sign was exhibited at their place of business, which was conducted in a house owned by Baldridge, reading "Graham Mill & Elevator Company."

■ The foregoing is a summary of the material facts. From them we have concluded that Baldridge's relation to Graham Mill & Elevator Company was that of broker. That relationship may be said to be one of limited agency, but it is not such a relationship as that the doctrine of respondeat superior would apply, rendering the company liable for the negligence of Baldridge on the occasion in question. The nature of the relationship between an employer and the person employed, so far as concerns the question of agency, is determined by whether the former had the right to exercise control over the details of the work. To establish the relationship of principal and agent it is not essential that the employer actually exercise his right of control over the details of the work, but it is essential to that relationship that he had the right to exercise that control. In Re-statement of the Law of Agency by the American Law Institute, as quoted in 2 Tex. Jur., p. 384, § 5, this definition is given: "The relation of agency is the consensual relation existing between two persons by virtue of which one of them is to act for and on behalf of the other, and subject to his control."

This court, in at least two cases [Tarver Steele & Co. v. Pendleton Gin Co., 25 S.W.(2d) 156, and Bertrand v. Mutual Motor Co., 38

S.W.(2d) 417], has quoted this definition with approval and in each instance has held that, in the absence of the right of the employer of control over the employee, the relation of principal and agent does not exist. This rule has long been well established by our decisions. Cunningham v. Ry. Co., 51 Tex. 503, 32 Am. Rep. 632; Cunningham v. Moore, 55 Tex. 373, 40 Am. Rep. 812; King v. Galloway (Tex. Com. App.) 284 S. W. 942; National Cash Register Co. v. Rider (Tex. Com. App.) 24 S.W.(2d) 28.

We sustain the first proposition.

Propositions 2 to 6, inclusive, complain of the trial court's definition of "an agent" and of the admissibility of certain testimony seeking to establish agency. These propositions are rendered immaterial by our holding that the evidence did not raise the issue of agency.

The seventh proposition complains of the definition contained in the charge of "natural and continuous sequence." We are still of the opinion which we expressed in the case of West Texas Transportation Co. v. Hash, 43 S.W.(2d) 152, 158, that it is not necessary to give a definition of this term, but since the court has done so, if that definition was erroneous and proper written objections were timely filed thereto, an error would probably be disclosed. The definition is the same as that which we condemned in the Hash Case, supra, and is as follows: "'Natural and continuous sequence' means an act which ordinarily follows, the result of which may reasonably be anticipated from it."

The definition is subject to some objections, but plaintiffs in error failed to point out any objectionable feature. The only objection to this definition was in this language: "Defendant excepts to the court's definition of 'natural and continuous sequence' because the same is erroneous in defining said term as an 'act' when in fact it is a succession of events."

Let us suppose that the trial court had agreed with this exception and had so changed his definition as to substitute for the words "an act," the suggested words, "a succession of events." The definition would then have read as follows: "'Natural and continuous sequence' means a succession of events which ordinarily follows, the result of which may reasonably be anticipated from it."

Would such change have cured the error in the definition? We think not. The statute (article 2185, R. S. 1925), requiring that objections shall in every instance be presented to the court before the charge is read to the jury, is a wholesome one designed to correct a well-known existing evil, and our courts have uniformly held the complaining party to a strict compliance with its provisions. If an objection to a charge is insufficient to point out to the trial judge the particular defect, it is also insufficient as the basis of an assignment of error in this court.

The eighth proposition complains of the failure of the trial court to define the term "proximately caused or contributed to cause." The court defined both "proximate cause" and "contributory negligence." It was therefore not error for it to refuse to define the term above quoted.

The ninth proposition presents the question that each of the defendants below were entitled to six peremptory challenges. By provision of article 2148, R. S. 1925, each party to a civil suit in the district court is entitled to six peremptory challenges. In construing this statute it has been properly held that two or more defendants should be considered as one party when they have a common defense. The defendants in this case had identical defenses. There were no fact issues between them. The same issues were submitted as to each, except only the issue of agency. The fact that an issue of agency was essential to the liability of one of the defendants and not as to the other, would not operate to render them two different parties to the suit. We think this well settled. Jones v. Ford, 60 Tex. 127; Hargrave v. Vaughn, 82 Tex. 347, 18 S. W. 695; Wolf v. Perryman, 82 Tex. 112, 17 S. W. 772; Allen v. Waddill (Tex. Civ. App.) 26 S. W. 273; Raby v. Frank, 12 Tex. Civ. App. 125, 34 S. W. 777; St. L. S. W. Ry. Co. of Texas v. Barnes (Tex. Civ. App.) 72 S. W. 1041; Witliff v. Spreen, 51 Tex. Civ. App. 544, 112 S. W. 98; International-G. N. Ry. Co. v. Smith (Tex. Civ. App.) 269 S. W. 886.

The case of St. Louis, S. F. & T. Ry. Co. v. Rutland (Tex. Com. App.) 292 S. W. 182, relied upon by plaintiffs in error, does not announce a different rule and does not overrule prior decisions by the Supreme Court. In that case the same acts of negligence were not charged to each of the defendants.

By the tenth and eleventh propositions complaint is made of an issue contained in the court's charge. The issue inquired as to whether or not the defendant Baldridge, in passing the car driven by the plaintiff David F. Klein, drove to the right "before he was reasonably clear of the overtaken car driven by Klein." It was objected that the charge was vague, ambiguous, and indefinite. If the criticism is just, its indefiniteness is the result of the use of the word "reasonably," and its use was more favorable to plaintiffs in error than they were entitled to. The contention that the court should have defined in his charge the term "reasonably clear of the overtaken car," is overruled.

The twelfth proposition complains of the argument of counsel. It is claimed that certain language employed by one of the attorneys for defendants in error should be construed as intimating that an insurance com-

pany had an interest in the defense. The language, to our minds, is not reasonably susceptible of that construction.

 Proposition 12 complains of the refusal of the trial court to give certain charges. Without going into details concerning this matter we think it sufficient to state that it is not error for the court to refuse an issue concerning an undisputed matter. Neither is it error to refuse a multifarious issue or one which has been embodied in the main charge.

The 14th and 15th propositions relate to evidence as to damage to the automobile. The facts disclose that the witness was qualified to express his opinion as to the value of the car before and after the accident, and the evidence supports the jury's finding.

 The 16th proposition presents that there was no competent proof in the record of the reasonableness of the charges for medical bills, etc., and that it was therefore error for the trial court in its charge to permit the jury to consider these items in fixing the amount of damages. We overrule this proposition. Mr. Klein testified that Drs. Shytles, Grubbs & Hodges attended Mrs. Klein after the accident, and that they rendered him a bill of $150 for their services. Dr. Shytles did not remember the amount of the charges, but testified that whatever charges were made at the time were reasonable, and that the treatment was necessary. This evidence was sufficient to authorize the inclusion of these items in the charge to the jury.

 It is our order that the judgment of the trial court awarding a recovery against plaintiff in error Graham Mill & Elevator Company be reversed, and that judgment be here rendered that defendants in error take nothing by their suit against it; that the judgment of the trial court against plaintiff in error Baldridge be in all things affirmed. Since no costs of appeal can be adjudged against Mill & Elevator Company, it is ordered that one-half of the costs of appeal be adjudged against defendants in error and the other one-half against Baldridge.

Affirmed in part, reversed and rendered in part.

### On Rehearing.

It is earnestly insisted that we erred in that portion of our opinion wherein we held that the objection to the court's definition of "natural and continuous sequence" was not sufficiently specific to point out any defect therein. We have carefully examined the entire record to determine whether, if we erred in that holding, and should now adopt the view of plaintiff in error, a reversal of the judgment would follow. Our conclusion is that it would not. The only possible suggestions of an intervening cause between the negli-

gence of plaintiff in error and the injuries were certain acts pleaded by plaintiff in error as contributory negligence on the part of defendant in error. These issues of negligence were answered by the jury contrary to the contentions of plaintiff in error, and, in fact, no other answers would have been warranted. This case is not involved. The plaintiff in error was clearly guilty of negligence. It is impossible to conceive that that negligence was not the proximate cause of the injuries sustained by defendants in error, and no other answer could have been made by the jury, based upon the evidence, than that the negligence of the plaintiff in error proximately caused the injuries.

Motion overruled.