**Debra Lynn CLARK, Plaintiff,**

v.

**Jack HEARD, C. R. Davis, Olen Miguel Lawley, and Larry Wilson, Defendants.**

Civ. A. No. H–81–744.

United States District Court,
S. D. Texas,
Houston Division.

May 3, 1982.

---

Jimmy Williamson, Houston, Tex., for plaintiff.

David R. Hurley, Asst. County Atty., Houston, Tex., for defendants.

## MEMORANDUM OPINION

SINGLETON, Chief Judge.

Plaintiff, Debra Lynn Clark, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, the fourteenth amendment, and Texas common law, against defendants,[1] officials of Harris County, for the unlawful arrest of plaintiff based upon mistaken identity. This case was tried before the court on January 19–20, 1982. The defendants offered no evidence and rested their case upon the conclusion of plaintiff's case. Having considered the pleadings, discovery, stipulations, exhibits, oral testimony of witnesses, and statements of counsel, the following constitutes this court's Findings of Fact and Conclusions of Law.

1. This case was originally brought also against Harris County; County Commissioners E. A. Lyons, Jr., R. Y. Eckels, Jim Fonteno, Tom Bass, and John Lindsay; Safeway Stores, Inc., and Deputy Douglas Robertson. Harris County and each of the County Commissioners were dismissed as defendants by Order of this Court on January 12, 1982, as plaintiffs failed to state a claim against these defendants for which this Court could grant relief. Safeway Stores, Inc., was dismissed as a result of plaintiff's unopposed oral motion for dismissal made during trial. Finally, Deputy Douglas Robertson was dismissed by Order of this Court during trial, as plaintiff failed to state a claim against him upon which relief could be granted.

## I. FINDINGS OF FACT

The facts of this case, which have been largely stipulated to by the parties in their Pre-trial Order, are as follows: Plaintiff, Debra Lynn Clark, was arrested at approximately 4:00 p. m. on October 27, 1980 for issuing bad checks. From her place of work, where she was arrested, she was taken to the county's detention facility in Humble, Texas. She was transferred to the Harris County Jail on the following day, October 28, 1980, where she remained until her release at about 1:00 a. m. on October 29, 1980.

Plaintiff was arrested by defendant Olen Miguel Lawley, a Deputy Constable for Precinct Number 4 of Harris County, on nine (9) warrants issued by defendant Larry Wilson, Justice of the Peace for Precinct No. 8 of Harris County. These warrants were based on affidavits executed on January 29, 1980 by William E. Gagnon, as agent of Safeway Stores, Inc., making a complaint against one "Debbi L. Clark" for writing bad checks to Safeway Stores, Inc. In each affidavit, Mr. Gagnon provided the date the check was written, the payee's name (Safeway Stores, Inc.), the drawee bank (Allied Deer Park Bank), and the amount of the check. Copies of each of the returned checks, on which the drawer's name, address, and phone number is printed and on which a Texas Driver's License number has been written, are attached to the affidavits.

The warrants, numbered 36264 through 36272, were originally issued on April 8, 1980 and commanded the arrest of "Debbi L. Clark" of "7405 Edbridge, Deer Park, Texas." The warrants, having been forwarded to the Constable of Precinct No. 8 for execution, were subsequently returned to the court with the notation that the Constable could not execute them because the defendant had moved from the Edbridge address. After obtaining a new address, defendant Wilson issued another warrant of arrest in each case on July 17, 1980 and forwarded them to the Constable in a new precinct, defendant C. R. Davis, Constable of Precinct Number 4, for execution. The warrants were reissued with the new address of "6123 Flintlock, Houston, Texas," all other information on the warrant remaining the same.[2]

Defendant Olen Miguel Lawley, Deputy Constable of Precinct 4, was responsible for executing the nine warrants. To do this, he had only the information provided on the warrants themselves: "Debbi L. Clark, 6123 Flintlock, Houston, Texas."[3] Defendant Deputy Lawley, however, never attempted service of the warrants at the address on the warrants—6123 Flintlock—during the three months the warrants were in his possession. If he had attempted to execute the warrants at this address, and had he found it to be an incorrect address, the standard procedure would be for the Constable's office to look for any forwarding address. If no address could be found, the warrant would go to the "dead file".[4]

Had defendant Deputy Lawley attempted to execute the warrants at the Flintlock address, he would have found that Debra

---

**2.** The warrants, affidavits, and returned checks for each of the nine incidents are numbered Plaintiff's Exhibits 7 through 16.

**3.** The affidavits and copies of the returned checks remain in the Office of the Justice of the Peace. Only the warrants themselves are sent to the constable for execution. In addition to the name and address, one of the nine warrants, warrant number 36265, provides a Texas Driver's license number corresponding with the driver's license number on the check, and an alias of "Debra Allen Clark". Plaintiff's Exhibit 14. Although the driver's license number was actually a false number, defendant Lawley testified at trial that, at the time he arrested plaintiff, he was not aware that the driver's

license number was a false number. Plaintiff's Exhibit 14. Furthermore, at the time of the arrest, defendant Lawley only had two of the warrants in his physical possession—warrants number 36266 and 36267. Plaintiff's Exhibits 10 and 11. Thus, the only identifying information that defendant Lawley had at the time of the arrest was the name "Debbi L. Clark" and the address "6123 Flintlock, Houston, Texas".

**4.** There was testimony at trial to the effect that the Flintlock address was also an incorrect address. Defendant Deputy Lawley, however, testified at trial that, at the time he arrested plaintiff, he was unaware that the Flintlock address was false.

Lynn Clark, the plaintiff in this case, had never resided at that address. In fact, at the time of the arrest, plaintiff's driver's license, which she had with her, reflected her name as "Debra Lynn Clark" and her address as being "16235 Morning Mist, Houston, Texas." She had resided at the Morning Mist address with her parents and, at the time of the arrest, was in the process of moving to the home of her sister, Belinda Clark on Northborough Drive in Houston, Texas.

The testimony adduced at trial leads to the conclusion that defendant Deputy Lawley relied on information concerning the location of "Debbi L. Clark" provided to him by Deputy Danny Robertson, the ex-husband of plaintiff's sister Belinda Clark. There was no information on the warrants themselves (or the affidavits or returned checks) that would lead one to believe that the "Debbi L. Clark" on the warrants was the plaintiff, Debra Lynn Clark, the sister of Belinda Clark. Defendant Deputy Lawley relied on information given him by Deputy Robertson in serving the warrant on plaintiff Debra Lynn Clark at an address obtained through information provided to him by Deputy Robertson without first trying to serve the warrant at the 6123 Flintlock address, which was on the warrants in his possession at that time. Although Deputy Robertson did not testify, there was testimony that the relationship between Deputy Robertson and his ex-wife, plaintiff's sister Belinda, was not good. The logical inference to be drawn is that the information given to defendant Deputy Lawley by Deputy Robertson was out of spite rather than of any factual significance, a fact that defendant Deputy Lawley should have pursued before acting.

It should be noted, however, and the court does find the fact significant, that both Debra Lynn Clark, the plaintiff in this case, and her sister, Belinda Clark, had previously been arrested for writing bad checks. Plaintiff had been arrested on a bad check charge on April 26, 1980. She had purged herself by payment of the bad check and was released from custodial detention the same day. The arresting offi-cer, in fact, was defendant, Deputy Lawley, although he testified at trial that he had no memory of this incident at the time he received the nine warrants for plaintiff's arrest. In addition to the April incident, there was a bad check case on file and pending against plaintiff in Justice of the Peace Davie Wilson's Court, although defendant Deputy Lawley was unaware of this case. Plaintiff was purged from this case by payment of the bad check and a fine on October 28, 1980. Plaintiff's sister Belinda Clark had several warrants for bad checks outstanding against her in Justice of the Peace Larry Wilson's Court. These warrants were in the possession of Deputy Lawley for execution at the time he arrested plaintiff, Debra Lynn Clark.

This case is further complicated by the fact that when Deputy Lawley testified that upon arresting the plaintiff, Debra Lynn Clark, on October 27, 1980 for executing the two warrants in his possession, she did not object, as she thought she was being arrested on a warrant issued for the bad check she did write. And, as a result, Deputy Lawley never asked to see her driver's license. According to Deputy Lawley, it wasn't until plaintiff was made aware of the other seven warrants that she objected to her arrest and incarceration. Plaintiff, however, testified at trial that she did in fact object at the time of her arrest and that defendant Deputy Lawley did not ask for her driver's license or any other type of information.

Upon being arrested, plaintiff was taken to the Humble facility for booking on the nine charges. During this time, the arresting officer turned over the warrant to the Sheriff, who copied the information he needed from it and returned it to the issuing court. As the identity of the person is established by the arresting officer, the sheriff's department has no procedures established to verify one's identity upon a claim of mistaken identity. Testimony at trial revealed that claims of innocence are common and are not investigated. Plaintiff in this case was booked as "Debra Lynn Clark," and although the warrant called for

the arrest of "Debbi L. Clark," the sheriff's department never questioned the arresting officer as to plaintiff's identification, nor was any investigation made towards an independent determination that the right person was arrested when plaintiff claimed that she was not "Debbi L. Clark".

On October 28, 1980, Justice of the Peace Larry Wilson was convinced by plaintiff's father, Jack Clark, that the Debra Lynn Clark who had been arrested was not the same person as Debbi L. Clark identified in the affidavits on which he had issued the warrants of arrest. He issued a release that day, and plaintiff was released from the jail at 12:30 a. m. on Wednesday, October 28, 1980. The testimony adduced at trial leads to the conclusion that plaintiff could have been released several hours earlier if her father had acted more expeditiously. However, several hours elapsed between the time the release was issued by the court and the time of her actual release.

In this suit, plaintiff requests this court to 1) enjoin Justice of the Peace Larry Wilson from issuing warrants that do not "particularily describe the person to be seized" as required by the fourth amendment; 2) enjoin Sheriff Jack Heard from arresting people or detaining people in the Harris County Jail until such time as the Sheriff implements procedures in order to reasonably insure that persons incarcerated are under a valid warrant that meets the requirements of the fourth amendment; and 3) award actual and exemplary damages resulting from her incarceration.

## II. CONCLUSIONS OF LAW AND OPINION

The issues of law to be addressed by this court are 1) whether defendants are liable under section 1983 and directly under the U. S. Constitution on the basis of the fact that the warrants did not "particularily describe the person to be seized" within the meaning of the fourth amendment to the U. S. Constitution, 2) whether plaintiff was falsely imprisoned under the common law of the State of Texas, 3) whether defendants are immune from suit on the basis of their good-faith, and 4) relief available to plaintiff as a result of her incarceration and detention.

1. *Liability of Defendants Under Section 1983*

The fourth amendment to the United States Constitution provides, in relevant part, that "no Warrants shall issue, but upon probable cause . . . and particularily describing . . . the persons or things to be seized." *U.S.Const. amend. IV.* Plaintiff alleges that the warrant in this case does not meet the requirement of the fourth amendment that the warrant particularily describe the person to be seized, because

it did not give her correct legal name, it did not have her correct address, it did not have any physical information by which she could reasonably be identified and in fact, did not have any identifying information at all by which it could be ascertained that DEBRA LYNN CLARK was the person who was sought to be charged by said warrants.

*Plaintiff's Motion for Entry of Judgment*, at 4–5.

Plaintiff's argument is misconceived. The warrants in this case conform to the requirements of the fourth amendment as well as the warrant requirements of the Federal Rules of Criminal Procedure. Rule 4(c)(1) of the Federal Rules of Criminal Procedure provides:

The warrant shall be signed by the magistrate and shall contain the name of the defendant or, if his name is unknown, any name or description by which he can be identified with reasonable certainty.

The general rule is that "the inclusion of the name of the person to be arrested on the arrest warrant constitutes a sufficient description to satisfy the fourth amendment requirement that the person to be seized be described with particularity." *Wanger v. Bonner*, 621 F.2d 675, 682 (5th Cir. 1980). There is no exception to this general rule as applied to this case. The warrants here, which were issued with probable cause on the basis of affidavits executed by an agent of Safeway, contain both the name and

address of the person to be seized, as such name appeared on the checks and the address provided on the checks, in the first instance, and then a forwarding address. This is all that is required by the fourth amendment and the Federal Rules of Criminal Procedure.[5] The fact that defendant Deputy Lawley took these constitutionally sufficient warrants and executed them at an address not on the warrant, and arrested a person whose name is spelled differently than the person wanted by the warrants, is not a problem involving the constitutional sufficiency of the warrants. Rather, it was a mistake based on his own negligence.

█ Because this court is of the opinion that the warrants at issue here are facially valid, in that they comply with the requirements of the fourth amendment, the Supreme Court's opinion in *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), is applicable. Baker involved a similar case of mistaken identity. In that case, respondent's brother obtained a copy of respondent's driver's license and inserted a picture of respondent's brother. Respondent's brother was later arrested on a drug charge, was booked in respondent's name, and was released on bond. Thereafter, an arrest warrant intended for the brother was issued in respondent's name and respondent was arrested on the basis of this warrant. Over his protest, he was taken into custody by the sheriff's department and detained in jail for several days before the error was discovered and he was released. Respon-

dent brought an action under section 1983 claiming a deprivation of liberty without due process. The court determined that, although there was a deprivation of plaintiff's liberty in that he was incarcerated due to a mistaken identity, it was not without due process because it was pursuant to a warrant conforming to the requirements of the fourth amendment:

> Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as each of requisite intent.

*Id.* at 145–56, 99 S.Ct. at 2694–95. Thus, an arrest based on mistaken identity, in itself, does not give rise to a constitutional violation if made pursuant to a warrant meeting the requirements of the fourth amendment—that is, a facially valid warrant. The Supreme Court further stated that

> Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles. [F]alse imprisonment does not become a violation of the fourteenth amendment merely because the defendant is a state official.

---

5. Plaintiffs cite *Wanger v. Bonner,* 621 F.2d 675 (5th Cir. 1980) as controlling. In *Wanger,* two deputies in executing an arrest warrant went to the address on the warrant. The person living at the address, the plaintiff, was not the person named in the warrant. Once this was established, the deputies conducted what the court found to be an un*reasonable search* of the premises to look for the person named in the warrant. The Fifth Circuit held:

> Generally, the inclusion of the name of the person to be arrested on the arrest warrant constitutes a sufficient description to satisfy the fourth amendment requirement that the person to be seized be described with particularity. *See* Fed.R.Crim.Proc. 4(c). That general rule does not apply in this case. The inclusion of an address on a misdemeanor warrant will not suffice to allow a law en-

forcement officer to conduct a search of the premises located at that address in the middle of the night over the objection of the person residing therein, when that person establishes he is not the suspect named in the warrant, and the officer knows that in approximately twenty to twenty-five percent of some incidences, the warrant address is incorrect.

The facts in this case are in no way analogous to the fact in *Wanger.* In *Wanger,* the plaintiff was not arrested pursuant to the warrant, as the deputies had determined that he was not the person named in the warrant. There was no case of mistaken identity. Rather, the Court merely held that the arrest warrant involved in the case couldn't justify the sweeping *search* of the premises just because that address happened to be on the warrant.

*Id.* at 146, 99 S.Ct. at 2695. There having been no constitutional deprivation in this case, plaintiffs only avenue of redress is under the principles of state tort law. Plaintiff in this case, however, need not resort to the state court for determination of this claim, as this court assumes pendent jurisdiction over the state law claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### 2. Liability of Defendants Under Texas Common Law

 Under Texas common law, the essential element of false imprisonment are: 1) wilful detention of the person, 2) detention without authority of law, and 3) a detention against the consent of the party detained. *Lozano v. Tex-Paint, Inc.*, 606 S.W.2d 40 (Tex.Civ.App.1980). Where an arrest by a law enforcement officer is concerned, the general rule is that "[i]t is a complete defense to an action for false imprisonment that the arrest or detention was by virtue of process, legally sufficient in form, and duly issued by a court or official having jurisdiction to issue it." *Id.* at 42 (quoting *Tandy Corp. v. McGregor*, 527 S.W.2d 246, 248 (Tex.Civ.App.1975, writ ref'd n. r. e.)). This general rule, however, does not apply where there has been the arrest of a wrong person under a valid warrant. The arrest and detention of a wrong person under a duly issued warrant, based upon the mistaken belief that the person under a duly issued warrant, as is the case here, amounts to false imprisonment. *Wolf v. Perryman*, 82 Tex. 112, 17 S.W. 772 (1891); *Taylor v. Davis*, 13 S.W. 642 (Tex.1890); *Clark v. Winn*, 19 Tex.Civ. App. 223, 46 S.W. 915 (1898, writ ref'd); *Landrum v. Wells*, 7 Tex.Civ.App. 625, 26 S.W. 1001 (1894). It is no defense that the arresting officer acted in good faith, *Douthit v. Jones*, 619 F.2d 527, 537 (5th Cir. 1980) (applying Texas law), or that the person arrested has the same name or a name similar to that in the warrant, *Wolf v.*

*Perryman*, 82 Tex. 112, 17 S.W. 772 (1891); *Clark v. Winn*, 19 Tex.Civ.App. 223, 46 S.W. 915 (1898 writ ref'd.) Thus Deputy Lawley is liable to plaintiff for false imprisonment under Texas common law.

 With respect to the remaining defendants, the question is whether they can be held liable for the false imprisonment of plaintiff, which resulted from the acts of defendant Lawley. Under article 6879b of the Texas Civil Statutes, a constable is responsible for the official acts of his deputies.[6] Thus, defendant C. R. Davis, a duly elected Constable of Harris County, Texas at all times relevant to this suit, is responsible for the acts of defendant Lawley, who acted under the official authority of the warrants and who was employed by Constable C. R. Davis at the time of the arrest in question.

 Defendant Larry Wilson, the Justice of the Peace of Harris County for Precinct No. 8, merely issued the warrants in question, as authorized by law. As defendant Lawley in executing the warrants was not acting under the immediate direction of defendants Wilson or Heard, these defendants are not liable.

### 3. Availability of Defense of Qualified Immunity

 The third question that the parties request this court to address is whether the defendants are immune from suit on the basis of a qualified immunity. Having previously found that the warrants in question were constitutionally sufficient and that there was, therefore, no constitutional violation actionable under the constitution or section 1983, it is unnecessary to address this issue with respect to plaintiff's federal claim. The only question concerning immunity of defendants from suit is thus whether defendants are immune from liability for the common law tort of false imprisonment

---

**6.** Article 6879b provides:

Constables shall be responsible for the official acts of their deputies, and they shall have power to require from their deputies bond and security; and they shall have the same

remedies against their deputies and the sureties of said deputies as any person can have against a constable and his sureties.

*Tex.Stat.Ann.* art. 6879b (Vernon 1960).

on the basis of a qualified good-faith immunity. As previously stated, however, proof of good faith will not enable an arresting officer to avoid liability under Texas common law for the unlawful imprisonment of an individual. *Douthit v. Jones*, 619 F.2d 527 (5th Cir. 1980) (applying Texas law).

### 4. *Relief Available to Plaintiff*

The final issue to be addressed by this court is the issue of plaintiff's relief. In her Motion for Entry of Judgment, plaintiff requests:

1. Injunctive relief enjoining Justice of the Peace Larry Wilson from issuing warrants that do not particularily describe the person to be seized as required by the Fourth Amendment;

2. Injunctive relief enjoining Sheriff Jack Heard from arresting people or detaining people in the Harris County Jail until such time as the Sheriff implements procedures in order to reasonably insure that persons incarcerated are under a valid warrant that meets the requirements of the fourth amendment;

3. That plaintiff have money damages from all the defendants named herein as a result of her incarceration and that such money damages for her actual damages be no less than $100,-000.00; and

4. As a result of the complete conscious and reckless disregard of plaintiff's right, that plaintiff have exemplary damages in the amount of no less than $1,000,000.00.

The plaintiff's requests for injunctive relief are denied, as this court has determined that the warrants at issue in this case complied with the requirements of the fourth amendment, in that they "particularily described the person to be seized." Thus, the only issue remaining is the amount of damages that plaintiff is entitled to as a result of her being falsely imprisoned.

In an action for false imprisonment under Texas common law, the compensable elements include expenses incurred to obtain release; reasonable medical expenses; damage resulting from loss of time and interruption of business; injury to one's health; physical and mental suffering including humiliation, shame and fright; and injury to one's reputation. In addition, exemplary damages may be had where defendant acted recklessly or wilfully and maliciously. 25 Tex.Jur. § 55, at 286–87 (footnotes omitted). However, where the defendant did not act wilfully and maliciously or recklessly, exemplary damages are not available. Furthermore, an honest mistake of a detained persons identity, based on the conduct of the person arrested, operates to mitigate damages. *Landrum v. Wells*, 7 Tex.Civ.App. 625, 26 S.W. 1001 (1894).

On the basis of the foregoing, this court is of the opinion that plaintiff is entitled to recover from the defendants Lawley and Davis, jointly and severally; the sum of $5,000. in compensation for plaintiff's mental suffering and injury to her reputation, and in compensation for damages resulting from loss of time at work. In computing this amount, the court has taken into consideration plaintiff's conduct at the time of arrest and the delays in release caused by her father. Because this court is of the opinion that defendants did not act wilfully and maliciously or recklessly in the execution of the warrant, and in the subsequent wrongful imprisonment, no punitive damages will be recoverable. Accordingly, it is hereby

ORDERED, ADJUDGED, and DECREED that plaintiff have judgment against the defendants Olen Miguel Lawley and C. R. Davis and that plaintiff recover from these defendants the amount of $5,000. It is further ORDERED that the attorneys for the plaintiff submit, within fifteen days, a proposed judgment in accordance with these Findings of Fact and Conclusions of Law, and submit the same to the defendants for approval as to form.