## NATIONAL CASH REGISTER CO. et al. v. RIDER. (No. 1132—5411.)

Commission of Appeals of Texas, Section B. Feb. 12, 1930.

Tomas G.. Pollard, of Tyler, and Burgess, Burgess, Chrestman & Brundidge and L. E. Elliott, all of Dallas, for plaintiffs in error.

Tom B. Ramey, Jr., of Tyler, for defendant in error.

SHORT, P. J. The statement and result of the trial of the case, by the Court of Civil Appeals, is as follows:

"This suit was filed by the appellee, Rider, against the appellants to recover damages for injuries to his person and property resulting from a collision between appellee's wagon and an automobile driven by appellant Weeks. According to the averments of the amended original petition, the collision occurred on the night of November 28, 1927, on one of the streets of the city of Tyler. Appellee, with others, was riding in his wagon drawn by a pair of mules, traveling in an easterly direction. Appellant A. S. Weeks, who, it is alleged, was an employee of the National Cash Register Company, was driving in a westerly direction at the same time on the same highway. The two vehicles collided, resulting in the killing of one of the appellee's mules, damages to his wagon, and physical injuries to the appellee. The negligence charged and submitted as issues to the jury is that the appellant Weeks was driving at a rate of speed in excess of 20 miles per hour; that he passed plaintiff's wagon at a dangerous rate of speed; that he failed to yield to plaintiff's wagon one-half of the street in passing; that he was driving on the wrong side of the street; and that he failed to keep a proper lookout. The appellants answered by a general demurrer, general denial, and specially pleaded contributory negligence, alleging that the wagon was driven by one Jack Green. under the direction and control of the appellee; that Green was guilty of negligence in driving on the wrong or left-hand side of the street and in failing to keep a lookout.

"The case was submitted on special issues, in answer to which the jury found as follows: (1) That the defendant Weeks was driving at a rate of speed in excess of 20 miles per hour; (2) that he was driving at such a rate of speed as to endanger the lives and limbs of other persons; (3) that he did not keep the car he was operating on the right-hand side of the road; (4) that he failed to keep a lookout for the approach of other vehicles going in the opposite direction; (5) that each of said acts of negligence was a proximate cause of plaintiff's damages. The jury found against the appellants on the allegations of contributory negligence, and fixed the amount of the appellee's damage at $2,700."

The first assignment in the application for the writ of error relates to the alleged error of the Court of Civil Appeals sustaining the action of the trial court in its refusal to instruct the jury to return a verdict in favor of the National Cash Register Company, based upon the proposition that the evidence was not sufficient to support a finding that the plaintiff in error, Weeks, was an employee of that company. We sustain this assignment.

The defendant in error introduced Weeks as a witness, and his testimony is only partially set out in the opinion of the Court of Civil Appeals, and upon the testimony copied in the opinion the Court of Civil Appeals held that Weeks was an employee of the company, and necessarily held that he was not an independent contractor. The statement of this witness to the effect that he was an employee of the National Cash Register Company and that he was so employed at the time of the collision, from which the damages sought to be recovered resulted, standing alone and unexplained, is sufficient, prima facie, to establish the allegation in the plaintiff's petition that Weeks was an employee of the National Cash Register Company, notwithstanding the fact that this statement is a statement of a conclusion of law rather than a statement of fact, since no objection was interposed to its introduction at the time the testimony was offered. However, it further appears from the testimony of this witness, brought out upon cross-examination, that under the rules of law, which we shall discuss hereafter, this conclusion of the witness was erroneous.

This explanatory testimony is unassailed in the record, though it could have been, even though the witness was introduced by the defendant in error, inasmuch as the witness was one of the adverse parties. Being unassailed, and being in harmony with the remainder of the testimony, it must be accepted as true in determining the question under discussion.

In every case which turns upon the nature of the relationship between the employer and the person employed, the essential question to be determined is whether the employer had the right to exercise control over the details of the work. 19 A. L. R. 240; King v. Galloway (Tex. Com. App.) 284 S. W. 942, 944. Weeks testified, among other things: "The National Cash Register Company has nothing to do with where I go and when. They have no interest in my work, other than the results, the totals of business that I turn in; * * * that the company had nothing to do with, or any interest in, how I got about over the country; * * * that car was mine." That Weeks was paid upon a commission basis is not necessarily a material fact in this case. In Cunningham v. Railway Co., 51 Tex. 510, 32 Am. Rep. 632, the Supreme Court of this state says on this subject: "In the first relation, that of master and servant, the master has the right to direct the conduct of the servant and the mode and manner of doing the work, and hence his corresponding liability for an improper execution of the same. * * * 'He is deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents not merely in the ultimate result of the work, but in all its details.' " In Cunningham v. Moore, 55 Tex. 377, 40 Am. Rep. 812, this rule has been reaffirmed. In Wallace v. Southern Cotton Oil Co., 91 Tex. 21, 40 S. W. 399, the defendant in error was held liable by reason of the fact that the company exercised authority over the contractor. The defendant in error alleged, as it was necessary for him to do, that Weeks was an employee of the National Cash Register Company at the time the collision occurred. It was equally necessary that the defendant in error should at least introduce sufficient testimony to show, prima facie, the truth of this allegation.

It appears in the well-written opinion of the Court of Civil Appeals, speaking through Judge Brady, in the case of United States Fidelity & Guaranty Co. of Baltimore, Md., v. Lowry, 231 S. W. 818, 821, the case upon which the defendant in error most strongly relies, this testimony from the witness Mrs. Lowry, in speaking of what the employer did with reference to the business between the employer and Mr. Lowry, the alleged employee, who was killed, and on account of which Mrs. Lowry applied for compensation, under the Workmen's Compensation Act: "Mr. Lowry often wrote Tom Padgitt [the alleged employer] for instructions as to what to do; they gave him instructions, and he did everything they told him to do." No such testimony as this appears in this record. The contrary is shown by the testimony of the only witness on this subject, as, for instance, this witness says: "The National Cash Register Company has nothing to do with where I go and when. They have no interest in my work, other than the results, the totals of business that I turn in." In other words, the testimony on this subject conclusively shows that the National Cash Register Company did not have the right to control the details of the work done by Weeks for its benefit, nor in fact did it have the right of control of Weeks in any essential part of the work which Weeks was doing for its benefit. When Weeks reported a sale of the machine he was selling for the company, he had finished his part of the transaction. In doing the things preceding this report the company had no right of control over him. If the weather was bad, and travelling was dangerous, the company did not have the right to direct Weeks to stay at home. If Weeks concluded to go to a certain place to see certain parties on a certain day, the company had no right to send him elsewhere. If Weeks saw proper to travel over the highways in the nighttime, the company had no right to tell him to travel only in the daytime. If Weeks saw proper to violate a town ordinance and travel at a prohibited speed in his car, the company had no right to interfere as his employer. Many other details incident to the work which Weeks was performing might be mentioned, in which the company, under the contract between the parties, would not have the right to direct Weeks to do other than as Weeks saw fit to do. In Aldrich v. Tyler Grocery Co., 206 Ala. 138, 89 So. 289, 17 A. L. R. 617, the Supreme Court of Alabama in substance holds that a salesman employed on a commission basis, who owned and operated an automobile to assist him in seeking his trade, and whose movements are in no way controlled by his employer, is, with respect to the operation of the car, an independent contractor, so that his employer is not answerable for injuries caused by his negligent operation of the car.

The case of Lewis v. National Cash Register Co., 84 N. J. Law, 598, 87 A. 345, in which the company was held liable, as an employer, for the acts of the driver of its sales agent in a certain territory, is distinguished from the case at bar, in that the testimony showed that the sales agent, under the contract with his employer, was required to devote his whole time to its business and to conform to its rules and regulations, and to employ such salesmen as the company might require and approve, and it further appeared that the use of an automobile by the agent was authorized

by the contract, and that the company had knowledge of and acquiesced in the use of the automobile. In Barton v. Studebaker Corporation, 46 Cal. App. 707, 189 P. 1025, 1028, it appeared that the salesman was free to choose his own time, place, and means of seeking and procuring purchasers, and that no one connected with the company controlled the salesman as to what he should do, from which was deduced, as a matter of law, that the salesman was pursuing an independent calling, and that the company was not responsible for his negligence. In that case it is said: "The real test as to whether a person is an independent contractor or a servant is whether the person alleged to be the master, under his arrangement with the other party, has or has not any authoritative control of the latter with respect to the manner in which the details of the work are to be performed, and therefore this test or element 'must, in the last analysis, always determine what was the essential nature of the relationship between the person who performed the given work and the person for whom it was performed.'" Labatt, Master and Servant, par. 18, p. 56; 17 A. L. R. 622.

Had the defendant in error made out a prima facie case, in support of its allegation that Weeks was an agent of the company, the plaintiff in error company would not have been entitled to a peremptory instruction. and, had the company not introduced any rebuttal testimony, no issue on this subject would have been presented. However, had the company introduced rebuttal testimony on this subject, an issue might have been presented, and the determination of the question would have been the province of the jury. In other words, if the defendant in error had, through another witness, made a prima facie case that Weeks was an employee of the company, and the company had then introduced Weeks, who testified as he did, an issue would have been presented, which could only have been determined, under proper instructions, by the jury. In James v. Tobin-Sutton Co., 182 Wis. 36, 195 N. W. 848, the Supreme Court of Wisconsin in substance holds that one selling automobiles on commission, who is required to own and finance his own car, and employs his time as he pleases, after making the required call for instructions at headquarters in the morning, is an independent contractor, for whose negligence in the operation of his car his employer is not liable. In the case of Dishman v. Whitney, 121 Wash. 157, 209 P. 12, 29 A. L. R. 460, it was held that a salesman canvassing in a city on a salary and commission, and using his own automobile to reach his prospects, is not an independent contractor, for whose negligent use of the car the employer was responsible; but it also appeared in that case that the employer had the right, under the contract, to control the mode or manner in which the work was to be done.

It is not essential that the right be exercised. The real question is whether the right existed. The fact that Weeks was acting within the scope of his employment in performing an act for his master's benefit is, of course, a necessary one to be found in addition to the fact that the relationship of master and servant existed. In other words, these two facts must be found to have an existence in order to hold the master liable for the negligent act of the servant. The authorities in support of the conclusion we have reached are almost uniform, in consequence of which we conclude that the defendant in error failed to establish facts showing that Weeks was an employee of the National Cash Register Company, and that an instructed verdict in favor of the company should have been given by the trial court.

Upon the trial of the case, the plaintiffs in error specially requested the trial judge to submit to the jury the issue of an unavoidable accident. The court having refused to submit this issue, an exception was duly reserved, and the point properly brought forward in the record. The Court of Civil Appeals, in sustaining the action of the trial court with reference to this issue, says: "It is exceedingly improbable, if the issue of unavoidable accident had been submitted as requested, that the jury would have answered favorably to the appellants. Such an answer would have been in conflict with answers previously given to other interrogatories." It appears that from this statement, above quoted, that the Court of Civil Appeals conceded there was testimony which raised this issue. We also think the issue was raised, and the plaintiffs in error, having requested the court to submit it to the jury, in an affirmative way, it was error to refuse the submission. Rosenthal Dry Goods Co. v. Hildebrandt (Tex. Com. App.) 7 S.W.(2d) 521. A defendant has a right to an affirmative presentation to a jury of any fact or group of facts relied on as a defense and raised by the evidence, and this is true, notwithstanding that answers to other issues rendered probable that the answer to this issue would have been unfavorable to the defendant. Galveston, H. & S. A. Ry. Co. v. Washington, 94 Tex. 510, 63 S. W. 534. In the case of Montrief & Montrief v. Bragg (Tex. Com. App.) 2 S.W.(2d) 276, 277, it is said: "A complete answer to the contention that the findings of the jury rendered harmless the refusal to submit the special issues complained of is that the jury may not have so found under the affirmative presentation of the same to which plaintiffs in error were entitled." We therefore sustain this assignment.

One of the elements of damage embraced in the verdict was the injury done to the wagon from the collision. There was testimony tending to show the value of the wagon immediately before it was injured to be

$125. There was no testimony from which the jury could have determined the value of the wagon as a result of the collision, nor was there any testimony that the wagon was rendered worthless by the collision. This question was properly raised in the trial court, and it clearly appears that the jury embraced in its verdict ascertaining the entire damages some value of the wagon, and inasmuch as there was no legitimate testimony from which the jury could have properly ascertained the value of the damage done to the wagon, we think the court erred in refusing to instruct the jury not to consider, in determining the amount of damages, the injury done to the wagon. We therefore sustain this assignment, but finding no error otherwise committed by the court and presented by assignments, we overrule the assignments not discussed.

We recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and that the cause be remanded to the district court, for such further and other proceedings as may be proper, not inconsistent with the law of the case as stated in this opinion.

CURETON, C. J. The judgments of the District Court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.