MORGAN v. OLMSTED–KIRK CO.

No. 3400.

Court of Civil Appeals of Texas. El Paso.

Sept. 10, 1936.

Rehearing Denied Oct. 15, 1936.

Caldwell, Gillen, Francis & Gallagher, of Dallas, for plaintiff in error.

Touchstone, Wight, Gormley & Price, of Dallas, for defendant in error.

WALTHALL, Justice.

J. D. Morgan, individually, and as next friend of his minor son, Milton J. Morgan, brought this suit in the district court of Dallas county, Tex., against Olmsted-Kirk Company, a corporation, and R. L. Bentley, to recover damages in behalf of himself and his said minor son; said damages alleged to have been caused by said R. L. Bentley negligently driving the automobile in which he was riding, against the said minor son.

It was alleged the said R. L. Bentley was the employee of Olmsted-Kirk Company, and that at the time of the collision was acting in the due course of his employment.

Upon the completion of plaintiff's evidence, the court sustained a motion for an instructed verdict as to it presented by defendant in error. The case as against defendant Bentley was submitted to the jury on the pleading and evidence heard and resulted in a judgment for plaintiffs, from which no appeal is prosecuted to this court.

The instructed verdict by the trial court in favor of defendant in error Olmsted-Kirk Company presents the sole question to be considered on this appeal. The question then presented here is whether or not there is sufficient evidence in the record to show that Bentley, at the time the injuries were sustained by the son, Milton J. Morgan, was a servant or employee of Olmsted-Kirk Company to justify the submission of that issue to the jury. If there is, the action of the court in instructing the verdict as to defendant in error should not have been given.

Plaintiffs in error base their contention that Bentley was an employee of defendant in error upon nine propositions.

### Opinion.

In considering the propositions presented, we are assuming that the pleading and the evidence sufficiently show that Bentley, on the occasion in question, was negligent in operating his automobile as alleged; that such negligence proximately caused the injuries and damages complained of, and as a consequence thereof the verdict and judgment as to Bentley were properly rendered.

We will refer to the parties respectively as plaintiff and defendant, as in the briefs.

In each of plaintiff's propositions, as we construe them, plaintiff contends, in effect, that by reason of the evidence offered and referred to a prima facie case is made showing that Bentley was an employee of defendant and not an independent contractor, and that by reason thereof it was error to instruct the verdict for defendant.

From the 414 pages of the record stating the evidence offered on the trial of the case as to Bentley and defendant, it seems hardly probable that a satisfactory statement of the evidence pertinent to the issues presented here can be made. The statement we make from the evidence will necessarily be fragmentary.

The evidence shows without controversy that at the time Bentley ran his car against Milton Morgan and caused the injuries complained of, defendant was in the wholesale paper business and that R. L. Bentley

was, in some capacity, making sales of defendant's paper in the city of Dallas.

The evidence, taken largely from plaintiff's brief, under their several propositions, shows substantially the following: Witness Hooten testified: At the time of plaintiff's injuries witness saw Bentley at the hospital; rode in his car; saw in the car one brief case and two or three packages; on several packages were stickers on which were written, "From Olmsted-Kirk Company"; had seen Bentley go into the defendant's offices several times a day before Milton was hurt.

Bentley testified, in answer to questions: "I sell paper;" represent defendant; efforts are confined to Dallas; have been with defendant a little over three years; worked as a salesman; make frequent visits to the office during the day; "only when I get business over there;" "turn orders in or get samples of paper something like that to show a customer;" all witness' activities have been confined solely to soliciting business for defendant.

Portions of the deposition of R. M. Olmsted were offered: Was vice president and general manager of defendant; had "contract with salesmen, but control over only employees or salesmen receiving salaries"; in 1932 Bentley started handling defendant's product as a commission salesman. Here quoting the record:

"Q. What instructions did you give him (Bentley) when he began working for you? A. Well, at that particular time, I might explain this: Naturally, anybody would know that there are very few businesses that needed a salesman of any kind; he applied for a position as a salesman and I didn't have a position in the plant for any one, salesman or otherwise, but we did have wrapping paper that two or three other men were handling on a commission basis; that's what Mr. Bentley's position is with the concern.

"Q. Selling wrapping paper? A. On a commission basis.

"Q. And what instruction did you give him with reference to the sale of that paper when he first started working for the Olmsted-Kirk Company? A. No instruction other than that he was not to solicit business from any concern that we had business from at that time."

The evidence from that witness shows he advised Bentley in that conversation of the business defendant had with other concerns and that defendant would not accept business from him from those concerns, and that such instructions were oral. Witness testified he told Bentley at what prices the different material could be sold and that his commission to him was from the goods he sold; the sales he made had to be accepted by defendant's credit department. Bentley was not employed for any definite time. "We advise salesmen on any changes in selling price of material." Defendant had one wrapping paper salesman working on a regular salary basis, and two men in the same capacity as Bentley, as commission salesmen. The salesmen would at times get together, compare notes, and talk over the business they had, and the merits of different or new products. Witness thought such meetings were advisable. Bentley had no authority to collect accounts. On making sale Bentley would either come in the office and report the sale, or phone the sale. If witness did not want Bentley or a commission salesman to handle or sell the stock any more, I would tell him so. Bentley had the right to sever his connection with the company at any time. Witness would not let Bentley handle defendant's paper and at the same time handle paper for other paper concerns. Bentley was not employed for any specific length of time. At no time was Bentley given any suggestion or leads as to where he could make a sale; he was acting as a commission agent to sell to any one he chose to sell to except to those who were already trading with us.

Other witnesses testified to practically some of the same facts as did Olmsted, and we have found no conflict in the evidence on any material fact pertinent to the inquiry here.

Other facts not stated above and not controverted are substantially to the effect that Bentley was not required to observe any certain hours; defendant furnished him no transportation; he furnished his own car; was operating it at the time and place of the accident causing the injuries to plaintiff, and was allowed nothing for the use of his car; had no salary; was allowed no drawing account; maintained his office at his residence; got his commission from the sales he made.

The evidence does not show that Bentley was instructed what route to take in soliciting business or how, when, or where to drive his car. As we view the evidence, it shows without conflict that defendant

had no authoritative control over Bentley with respect to the time or the manner in which the details of his work or service were to be performed.

■ We have reviewed the entire record and have concluded therefrom that Bentley was an independent contractor of defendant as submitted by defendant, and not an employee as contended by plaintiff.

■ It would serve no good purpose to discuss severally the plaintiff's nine propositions and undertake to state the fact or facts there shown and apply the law to facts as there found. We think it more satisfactory to consider the facts as a whole and apply the law thereto as we conclude the law to be. For instance, the facts stated by witness Hooten, though uncontroverted, are not sufficient to establish prima facie that Bentley was an employee of defendant.

In Weber v. Reagan (Tex.Civ.App.) 91 S.W.(2d) 409, referred to by plaintiff as sustaining his first proposition under the Hooten evidence, the court found that the appellant was the owner of the truck which inflicted the injury. Here defendant did not own the truck that inflicted the injury and no such conclusion of law could arise as in that case.

If the truck was owned by defendant and the truck bore the words indicated by Hooten on its side, it still would not be of controlling importance. Riggs v. Haden Co. (Tex.Com.App.) 94 S.W.(2d) 152–154. Certainly the evidence of Hooten alone did not raise the issue that Bentley was an employee, nor is it in conflict with the testimony of any other witness.

We will not be able in the short space of an opinion to discuss all of the cases to which we are referred. We have with much care reviewed the cases referred to. We have stated the facts and must content ourselves by stating the law as applied to fact, or refer to the cases which, in our opinion, state the law to be applied to the facts.

■ The nature of the oral employment contract, simple in its terms, can be determined only by a consideration of all of the facts, and circumstances shown by the evidence. Bentley applied to defendant for work. Defendant's business was that of a wholesale seller of its paper. Bentley's undertaking under the employment, in effect, substantially, was that he could at his own time and expense and without any control or direction of defendant, contact proposed purchasers and contract sales of defendant's paper, subject to the approval of defendant, and at prices furnished him by defendant, for which he was to receive a commission on sales made. An "employee" has been held to be "one who works for and under the control of his employer." Shannon et al. v. Western Indemnity Company et al., 257 S.W. 522, 523 (Tex.Com.App.). In the above case the court quotes with approval from Cunningham v. International Railroad Co., 51 Tex. 503, 510, 32 Am.Rep. 632, in which, discussing the difference between the two relations of master and servant and employer and employee and independent contractor, the court said: "In the first relation, that of master and servant, the master has the right to direct the conduct of the servant and the mode and manner of doing the work, and hence his corresponding liability for an improper execution of the same. * * * 'He is deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents not merely in the ultimate result of the work, but in all its details.'"

In Street on Personal Injuries, pars. 11, 112, it is said no better test can be applied in determining the relation of master and servant than to say the master retains or exercises the power of control in directing, not merely the end sought to be accomplished by the employment of another, but as well the means and details of its accomplishments; not only what shall be done, but how it shall be done.

In the Shannon v. Western Indemnity Co. Case, supra, it is said, in effect, that the outstanding quality of any contract, as touching the question or quality of its independence, and which is ultimately the one most decisive of the question of its independence, is the one of the right of control of the person employed with respect to the details of the work. All other elements bear some relation to that one, and directly or indirectly indicate the presence or absence of the right of control. For this reason it is said the supreme test of the relation is the right to control.

At page 725 of the annotation in 20 A. L.R., it is said:

"The absence of any testimony warranting the inference that the employer actually exercised control over the work while it was in progress has frequently been ad-

verted as to an element which tended to prove that he had no right to exercise his control, and consequently that person employed was an independent contractor.

"Of much probative force is the fact that the person employed is free as to his hours of labor, may work when and as he pleases."

The following additional cases are in point and sustain the conclusion we have reached: Southern Surety Co. v. Shoemake (Tex.Com.App.) 24 S.W.(2d) 7; Dave Lehr, Inc., v. Brown (Tex.Com. App.) 91 S.W.(2d) 693; National Cash Register Co. v. Rider (Tex.Com.App.) 24 S.W.(2d) 28; American National Ins. Co. v. Denke et al., 95 S.W.(2d) 370, the opinion handed down on June 17, 1936, by the Supreme Court, and not yet reported [in State report]; Smith Bros. v. O'Bryan (Tex.Com.App.) 94 S.W.(2d) 145. We think this last-cited case very much in point. After a review of the above and many other authorities not cited, we are of the opinion that Bentley was not the servant or employee of defendant but occupied a position analogous to an independent contractor.

The case must be affirmed, and it is so ordered.

Affirmed.