## HART v. TRADERS & GENERAL INS. CO.

### No. 13597.

Court of Civil Appeals of Texas. Dállas.

Jan. 26, 1945.

Rehearing Denied Feb. 23, 1945.

Lee J. Taylor and Will R. Saunders, both of Dallas, for appellant.

John W. Miller, Lightfoot & Robertson, and Dan P. Johnston, all of Dallas, for appellee.

BOND, Chief Justice.

This suit arises under workman's compensation proceedings. Appellant entered into a compromise settlement agreement with appellee, and the insured, which was submitted to and approved by the Industrial Accident Board, and the consideration therefor paid to appellant. Appellant seeks to set aside the settlement, alleging fraud and misrepresentation, and to recover compensation as an employe of Mr. Meyer, or Dallas Nash Company, Inc., for specific injuries—the loss of an eye—sustained in the course of his employment. Appellee, Traders & General Insurance Company, was the employer's insurance carrier.

The record reveals that appellant was injured on the premises of Interstate. Material Company, where he had gone, either

on his own initiative or under direction of his employer, to perform his duties, and while so engaged in operating an electric power driven circular saw, owned by Interstate Material Company, cutting lumber with which to build a fence on his employer's premises, a block of wood was caught in the saw and thrown, hitting him in the eye, resulting some months later in the loss of his eyesight. A Mr. Hollis of the Interstate Company, having been advised of the injury, immediately sent appellant to a hospital for treatment, and, on the same day, caused appellant to render to him a statement of the facts and circumstances of his injury. The statement, signed by appellant and witnessed by his wife and son, is as follows: "* * * While engaged in sawing some lumber under an agreement with Mr. Meyers to build a fence for $15.00 I was injured as a result of a block of wood getting caught in the saw and kicking back in my left eye injuring it seriously so that three stitches were required to close it. I had agreed to build the fence for Meyers in my own way for $15.00, Meyers was to furnish the materials. These materials were sold to Meyers by the Interstate Wrecking Co. and in order to make my job easier I asked the loan of, their circular saw, agreeing I'd reimburse Mr. Hollis for the electricity used. Mr. Hollis nor anyone had anything to do or any supervision over what I was doing. * * *" Appellant's son, Joe Hart, made a similar statement, disclosing that "About 10:45 A.M., Friday, Jan. 31, 1941, I was with my father at the yard of the Interstate Wrecking Co. at 1112 Forest Ave., Dallas, Texas, for the purpose of cutting some pickets that were to be used in building a fence for Mr. Meyers of the Nash Company. My father was to build the fence for $15.00 and Mr. Meyers was to furnish the materials as I understood it." Simultaneously with the execution of the statements above mentioned, and a report of the physician that appellant's eyesight could be saved, Mr. Hollis, for Interstate Material Company, obtained a release from appellant, in consideration of payment of $50, fully absolving that company from consequences of negligence and damages and "from any and all actions, causes of actions, claims, demands, damages, costs, loss of service, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or

to result from an accident that had occurred on or about the 31st day of January, 1941 * * *". Subsequently, about ten days after appellant was injured, without knowledge of the previous statement and release made by appellant to Mr. Hollis, or Interstate Material Company, a Mr. Dunlap of Traders & General Insurance Company obtained a further statement from appellant as to the circumstances of the injury and the scope of his employment, similar, in effect, to that given to Mr. Hollis of the Interstate Company, above detailed; and at the same time, in consideration of payment of $175 cash and his hospitalization in the sum of $150, secured from appellant a release absolving Dallas Nash Company, Inc., and the insurance carrier (appellee), from all liability incident to the accident.

The issues upon which the rights of the parties were determined, and which we are called upon to determine, are: (1) The right of appellant to recover compensation under terms of his employment by Mr. Meyer, or Dallas Nash Company, Inc.; and (2) whether the release executed by appellant to the third party, Mr. Hollis, or Interstate Material Company, was an action of appellant to "proceed at law against the person other than the subscriber," thus barring him from proceeding to recover compensation under Workmen's Compensation Act, Art. 8307, R.S. Sec. 6a.

We think appellant's proof on the issue of fraud and misrepresentation, alleged to have been practiced by Mr. Dunlap in securing the release absolving Dallas Nash Company and its insurance carrier from all liability on account of the injury, is but little more than a scintilla of evidence to set the release aside; and, as the trial court sustained appellee's motion for judgment at the conclusion of appellant's testimony, we must conclude that, suffice to say, the evidence was sufficient to carry the issue to the jury, and, but for the two controlling issues stated above, either of which is fatal to the suit, the judgment would have to be reversed and remanded.

On the first issue presented, appellee seeks to avoid the imposition of liability on the ground that the claimant was not an "employe" of the insured, but an "independent contractor." It appears from the written statements of appellant and his son, Joe Hart, quoted above (pertinent to this

issuè), that appellant was to build a fence on the premises of the insured "in his own way" for $15; the insured was to furnish the materials, which were purchased from Interstate Material Company; and appellant stated that in order to make the job easier for him, he asked Mr. Hollis of Interstate Company for the loan of their circular saw, agreeing to reimburse the company for all electricity used. Then, too, in a subsequent statement to Mr. Meyer, appellant related: "On January 29, 1941, I went to see Mr. Meyers at the Dallas Nash Company about building a fence across the back of their used-car lot. Mr. Meyers asked me what I would build the board fence for if he would furnish all the material. He also asked me how long it would take to build the fence. I told him that my boy and I would build the fence for $15.00 and it would take both of us about 1½ days. This price was for the labor only and Mr. Meyer was to furnish all material and the building permit." On trial, appellant testified, varying somewhat from his previous statements, that on January 29, 1941, Mr. Meyers called him over the telephone and asked that he come to his office; that he had work for him to do on a parking lot. He was asked:

"Q. State what he (Meyer) said and what you said? A. He wanted a fence built across the parking lot, and wanted the approximate cost of the labor on that fence, and I told him about $15.00 as near as I could come to it. He said he had to get a permit before he could start the work, and he would call me when he was certain he could get it and let me know when to begin working. So I think about the next day he called me back and asked me to come to the office which I did. He gave me a dollar and told me to go to the City Hall and ask for some fellow named Eddy, who was the man who supplied the permit, and then to go on to the Interstate Wrecking Company and cut the work there, he didn't want any blocks on his lot.

"Q. What, if anything, did he say to you with reference to who would have supervision over the work? A. He said he would show me where he wanted to put the fence, and he wanted me to fix it that way, that he would give me the length and the whole set-up and would supply the lumber at the yard, for me to cut it there, and after it was hauled onto the yard he would show me how the fence was to be built.

He didn't build the fence but he did show the boys that did build it."

Joe Hart, son of appellant, also testified on trial substantially the same as did his father, and as varied and contradictory to prior statements. However, we think the varying and contradictory testimony of the two witnesses, on which appellant relies to sustain the scope of his employment, in legal effect, is insignificant on the issue as to whether appellant was an "employe" or an "independent contractor."

The facts presented in this class of cases, frequently raise a question for the jury in respect to the independence of the contract, especially when there is testimony bearing on the nature of the control exercised by the employer, or where the court cannot, as a matter of law, say that the party alleged to have been an independent contractor was such in fact. National Cash Register Co. v. Rider, Tex.Com. App., 24 S.W.2d 28; Texas Employers' Ins. Ass'n v. Owen, Tex.Com.App., 298 S.W. 542. However, in every case which turns on the nature of the relationship between the employer and the person employed, the essential question to be determined is whether the employer had the right to exercise control over the work and direction of the person employed, and hence the corresponding liability for the improper execution of the same. "A contractor is any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details. The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished." Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522, 524; Texas Employers' Ins. Ass'n v. Owen, supra.

The facts of this case, we think, bring appellant within the accepted definition of an "independent contractor." Mr. Meyer, or Dallas Nash Company, Inc., engaged appellant to build the fence of certain designation across the back of their used-car lot; Mr. Meyer to furnish the materials, lay out the plan for construction and its location on the lot; and appellant, a carpenter, was to perform the labor, em•

ploy his own helper and carry the designated plan to completion. The price for the labor was agreed upon at $15 or "about $15.00" as appellant later contends—which we think is an immaterial difference. The fact remains that appellant contracted to do the work at an agreed price, employed his own helper or helpers, and when completed his son received the full compensation of $15. Evidently, liability for the execution of the work rested exclusively on appellant and his son. Contracting parties may fix the amount of the consideration for labor to be performed, or they may leave the amount undetermined until the subject of the contract is completed, and then make settlement; then, too, the employer may well assume the task of advising the other contracting party the details of the work and its location, and yet avoid the imposition of liability that the claimant was an employe as distinguished from a contractor. Liability for completion of the work, after injury, was recognized by appellant, in his having his son and a Mr. Harper complete same, for which Mr. Meyer paid the son $15, and the son paid Mr. Harper for his labor. Mr. Meyer, or Dallas Nash Company, exercised no control over appellant, or his employes; the son and Mr. Harper prosecuted the undertaking to completion "in their own way," and on their own time. The rights of the parties are controlled by the provisions of the Workmen's Compensation Act, and not by common law. Injuries to an "independent contractor" in the prosecution of his work are not covered by the statute; hence appellant could not recover against appellee for his alleged damage.

On the second issue, supra, which bars appellant to recover compensation because of the release executed by him to Mr. Hollis, or Interstate Material Company, there is no theory whereby the wording of the release could be considered, other than as absolutely absolving the releasees from all consequences of negligence. The accident occurred on the premises of the Interstate Material Company, resulting from an improvised guard on its electric driven circular saw furnished, or loaned, to appellant by Mr. Hollis. The issue of negligently furnishing, or loaning, the saw without safeguards, and its corollary issue, the proximate cause of appellant's damage, is clearly shown in evidence. Appellant does not attempt to set the release aside, he merely attempts to avoid the legal effect of the release by ignoring its binding terms; and Mr. Hollis and the Interstate Material Company are not parties to this suit. It may be true, under appellant's theory, that the third party is not guilty of negligence in furnishing a defective, or an unsafe saw, as to make it liable to the employer or insurance carrier in suit for subrogation; but, certainly, in such a suit the subsisting release, interpreted in the light of its terms, could successfully be pleaded in a subrogation suit, and the insured and insurer would be bound by the release executed before the right of subrogation matured. "An absolute release binds as effectively as a prior judgment." Texas Employers' Ins. Ass'n v. Brandon, 126 Tex. 636, 89 S.W.2d 982, 984.

In the Brandon case the identical question, as here presented, was before the Supreme Court, and, after quoting the statute, Art. 8307, Sec. 6a, and applying its provisions to the question, the Court said: "While an election to proceed against the insurer for compensation does not altogether bar an action by the employee for damages against a negligent third person, an election to proceed at law against such person is a bar to the employee's right to compensation. Employers' Indemnity Corporation v. Felter, Tex.Com.App., 277 S.W. 376"; citing also Hanson v. Ponder, Tex. Com.App., 300 S.W. 35, 40.

We have examined all points of error presented by appellant, finding no error in the action of the trial court in peremptorily instructing the jury in favor of appellee; the judgment is affirmed.

Affirmed.